**CAMERON COUNTY, Appellant,**

v.

**Jose A. VELASQUEZ and Maria Velasquez, Appellees.**

**No. 13–83–172–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 16, 1984.

Rehearing Denied March 22, 1984.

G. Thomas Coghlan, Lang, Cross, Ladon, Boldrick & Green, San Antonio, for appellant.

Tony Martinez, Horacio Barrera, Brownsville, for appellees.

Before GONZALEZ, UTTER and KENNEDY, JJ.

## OPINION

GONZALEZ, Justice.

This is an appeal from a judgment in a suit for damages under the Texas Tort Claims Act.[1] Appellee, Jose Velasquez, brought suit against appellant, Cameron County, for personal injuries sustained when he either slipped or dove off a shrimpboat that ran aground in the Gulf of Mexico, near the shores of a park owned by Cameron County. Appellant alleges that it owed no duty to appellee since it did not own or control the premises where the boat ran aground. We agree and reverse and render judgment that appellee take nothing.

\* \* \* FACTS \* \* \*

In the early morning hours of May 4, 1978, the shrimpboat *Kerry Dancer* ran aground in the Gulf of Mexico near the shores of Andy Bowie Park in South Padre Island. The *Kerry Dancer* was a wooden-hull boat approximately sixty feet long and eighteen feet wide with a pilot house about six to seven feet above the deck.

Bill Kenon, a salvor with twenty years of experience, arrived on the scene that same day. As part of his salvage operations, a line was attached to the *Kerry Dancer* and a winch truck on shore attempted to move the vessel closer to the beach.

Kenon's crew was able to move the boat only ten or fifteen feet as it had begun "sanding up." The witness explained that by this he meant to describe how planks on the bottom of the vessel had come loose allowing the hull to fill with sand.

Kenon stated that when he last saw the boat, it was sanded up and not capable of moving on its own. He fixed the location of the vessel at various distances ranging from "a couple of hundred feet out" to "approximately a hundred yards, maybe

---

1. TEX.REV.CIV.STAT.ANN. art. 6252–19 § 18(b) (Vernon 1979 & Vernon Supp.1982–83).

not quite that far." He stated the distance would depend on the tide. In any event, he testified that during all the time he was familiar with the boat, it never moved off the second sand bar from the beach and was at all times surrounded by water. Kenon was dismissed from the job.

Subsequently, on approximately May 11, 1978, Coastal Diving Company attempted to acquire ownership of the vessel in exchange for its salvage fee. David Landin of Coastal Diving said that when he saw the *Kerry Dancer*, it was wallowing in the surf on the second sand bar from the beach. He fixed the distance from the beach at about forty yards. Coastal removed the outriggers, booms and nets from the vessel. When Coastal discovered there were liens against the vessel, it abandoned its operation.

Jose Velasquez testified that on June 3, 1978, he drove to Andy Bowie Park and after drinking several cans of beer, got onto the boat. After spending approximately fifteen to twenty minutes on top of the pilot house, he either slipped or dove off and severely injured his spine. Thereafter, he filed suit against the County and alleged that the County operated the park in a negligent manner by allowing the partially sunken boat to remain *on its premises*, that the County violated a statutory duty to clean, maintain, and supervise its public beaches in that it failed to either eliminate the dangerous condition or warn of same.[2] The County answered that Velasquez was injured because of his own negligence and that it was not liable because it did not own or control the premises.

At the conclusion of evidence, the County moved for an instructed verdict on the basis that the undisputed evidence showed that at the time of the accident, the boat was located in the Gulf of Mexico, and, as such, was on property belonging to the State of Texas and therefore the County did not owe a duty to Velasquez. The trial court denied the motion, and after the boiler plate definitions of preponderance of the

evidence, ordinary care, proximate cause, and negligence were given to the jury, the trial court submitted the case to the jury as follows:

### QUESTION 1

Whose negligence, if any, do you find from a preponderance of the evidence was a proximate cause of the injuries sustained by Mr. Velasquez on the occasion in question?

(a) Cameron County

(b) Mr. Velasquez

(c) Both Cameron County and Mr. Velasquez

(d) Neither Cameron County nor Mr. Velasquez

Answer: ___C___

You are instructed that in answering the above question you must confine your deliberations on this question to the following acts or omissions, if any, on the part of Cameron County:

(1) Failure, if any, to warn the public of dangers, if any, created by the Kerry Dancer.

(2) Failure to remove, or cause to be removed, the Kerry Dancer prior to the occasion in question.

(3) Failure to close Andy Bowie Park to the public in the area on the Kerry Dancer prior to the occasion in question.

Your are instructed that in answering the above question you will confine your deliberations on this question to the following acts or omissions, if any, on the part of Mr. Velasquez:

1. His lookout.

2. Going aboard the Kerry Dancer.

3. Diving, if he did, from the Kerry Dancer.

4. Failure, if any, to hold on to the mast.

5. Going to the Kerry Dancer while intoxicated, if he was.

If in answer to Question 1 you have answered "Both" then answer Question

---

**2.** Velasquez also filed suit against the owner of the vessel and Coastal Diving. These defend-

ants were dismissed prior to submitting the case to the jury.

2; otherwise, do not answer Question 2, and skip to Question 3.

Question 2 was the comparative negligence issue and the jury found the County 70% negligent and Velasquez 30%. The third issue was the damages issue. The jury found that 1.88 million dollars would compensate appellee for damages that included mental anguish, pain and suffering, lost earnings and lost earning capacity. Judgment was entered in favor of Velasquez in the amount of one million eighty five thousand dollars ($1,085,000.00) plus interest at the rate of 9% per annum with the proviso that payment by the County of one hundred thousand dollars ($100,000.00) would fully discharge its liability.

The County perfected this appeal, and among other things, alleges that the trial court committed error in entering judgment for appellee because:

(1) there was no evidence that the County owned or controlled the property where the boat was located.

(2) appellee failed to request an issue establishing the County's ownership or control of the property where the boat was located.

(3) there was no evidence to support the jury finding that the County was negligent.

■■■ The instant suit was permissible under the Texas Tort Claims Act, TEX. REV.CIV.STAT.ANN. art. 6252–19 (Vernon 1970 & Vernon Supp.1982–83) which provides for a limited waiver of sovereign immunity. Section 3 of the act makes each unit of government liable for money damages for personal injuries proximately caused by its negligent acts or omissions in the use of tangible property, real or personal. TEX.REV.CIV.STAT.ANN. art. 6252–19 § 3 (Vernon Supp.1982–83).

### DUTY OF THE COUNTY

It is fundamental that the right of recovery for an injury sustained by the plaintiff as a result of the conduct of defendant must be founded upon a legal duty of some character owed to the plaintiff with respect to the injury and a violation of that duty by the defendant.

Rassman, Of Torts and Defendants, 16 Sw.L.J. 244, 245 (1962) and authorities cited therein. The three elements of actionable negligence are: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately resulting from such breach. Each of the elements must coexist in order that there can be any recovery. (citations omitted) Whether or not a legal duty does exist under a given state of facts and circumstances is essentially a question of law to be determined by the court.

*Rodriquez v. Carson*, 519 S.W.2d 214, 216 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.). A plaintiff must prove the existence and violation of a legal duty owed to him by the defendant to establish tort liability. *Coleman v. Hudson Gas and Oil Corp.*, 455 S.W.2d 701 (Tex.1970).

So, the threshold question is whether the County owed the plaintiff a duty. Put another way, was Cameron County owner or occupier of the premises where the boat went aground? If it was, as a matter of law it owed a duty to the plaintiff and the scope of that duty is delineated in the Texas Tort Claims Act. If it was not, it is self evident that there is no basis for plaintiff's cause of action against the County.

Restatement (Second) of Torts § 328E (1974) defines owner or occupier in terms of "possessor":

A possessor of land is

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under clauses (a) and (b).

Another issue presented to this Court is if ownership is a contested issue, whether it is incumbent upon the plaintiff in a premises defect suit to prove ownership in the defendant before he may recover for his injuries.

In *McLelland Stores Co. v. Lindsey*, 157 S.W.2d 1013 (Tex.Civ.App.—Eastland 1942, writ ref'd w.o.m.) the court wrote:

Defendant, in effect, contends that there was no evidence to show that it owned or operated or was in any wise connected with, the store in which Mrs. Lindsey fell. Its [sic] general denial had the effect, of course, of joining issue upon such fact alleged by the Plaintiff; and cast the burden of establishing such fact upon the Plaintiff.

*McLelland Stores*, 157 S.W.2d at 1014; *see also West v. Johnson*, 129 S.W.2d 811, 815 (Tex.Civ.App.—Fort Worth 1939, writ ref'd) (where named defendants specifically alleged to be owners and operators of premises, general denial by defendants would put all material allegations in issue). We hold that it is the burden of the plaintiff to secure a finding that the defendant was the owner or occupier in control of the premises in a premises defect case before he may recover from the defendant for his injuries.

No issue concerning ownership or control was submitted to the jury. Therefore, implicit in the judgment is an implied finding by the court that the County was the owner or in control of the premises.

We recognize that ownership is not synonomous with control; however, the Supreme Court has held that one who is not an owner owes the same duty to one on the premises as does the owner if that occupier is entitled to exclusive control. *Hernandez v. Heldenfels*, 374 S.W.2d 196, 198 (Tex. 1964).

The evidence offered by plaintiff to show that Cameron County owned or controlled the premises was the following: (1) that the commissioners court had closed off the beach entirely at the time of an oil spill, (2) that at one time 12½ miles of the beach were closed in order to allow the Ridley Sea Turtles to propagate, (3) that the County had in time past employed lifeguards, (4) that the County operated a travel trailer park, leased a restaurant, leased a "river ride," and operated a marina, all in conjunction with its parks, (5) that the County carried out beach cleanup duties

and had beach cleanup contracts with the Parks and Wildlife Department, (6) that the County filed suit seeking an injunction against the owners of the vessel to force them to remove it, (7) that the County may have attempted to regulate topless bathing and shark baiting, and (8) that in 1976, the County had removed the fragments and pieces of another shrimpboat, the *Miss Rima*, as it broke up after *going ashore* in the Isla Blanca Park, another park owned by the County.

These facts are no evidence that Cameron County owned or controlled the premises where the *Kerry Dancer was located. The above activities occurred on the beach itself.* The undisputed evidence clearly established that from the time the *Kerry Dancer* ran aground on the second sandbar until the time of the accident, the vessel was at all times surrounded by the waters of the Gulf of Mexico. In order for the plaintiff to prevail, we have to extend "the beach" to include the second sandbar. TEX.NAT.RES.CODE ANN. § 61.001(5) (Vernon 1978) defines beach as follows:

(5) "Public beach" means any beach area, whether publicly or privately owned, extending inland from the line of mean low tide to the line of vegetation bordering on the Gulf of Mexico to which the public has acquired the right of use of easement to or over the area by prescription, dedication, presumption, or has retained a right by virtue of continuous right in the public since time immemorial, as recognized in law and custom.

It is well settled that title to land covered by waters of bays, inlets and arms of the Gulf of Mexico is in the State of Texas and such lands constitute public property held in trust by the State for the use and benefit of all the people. *Lorino v. Crawford Packing Co.*, 142 Tex. 51, 175 S.W.2d 410, 413 (1943); *City of Corpus Christi v. Davis*, 622 S.W.2d 640, 643 (Tex.Civ.App.—Austin 1981, writ ref. n.r.e.), TEX.NAT. RES.CODE ANN. § 11.012(c) Vernon 1978.

Since there was no evidence that Cameron County owned or exercised control over

the sandbar where the *Kerry Dancer* lay aground, we hold that the County had no legal duty to warn of or to eliminate the danger in question.

## OMITTED ISSUE

█ Furthermore, it is the duty of the one who has the burden of proof on a ground of recovery or defense to see that all essential elements of his cause of action are submitted to the jury. Tex.R.Civ.Proc. 279. *Hopkins v. Standard Fire Insurance Co.*, 554 S.W.2d 270, 273 (Tex.Civ. App.—Houston [1st Dist.] 1977, no writ). *See also Dupree v. Piggly Wiggly Shop Rite Foods, Inc.*, 542 S.W.2d 882, 888 (Tex. Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.) (incumbent upon plaintiff to request special issues if she was to prevail upon theory); *Emmord's Inc. v. Obermiller*, 526 S.W.2d 562, 568 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.) (duty of defendant to submit issues covering all controverted elements of its affirmative defense).

█ As stated in *Rosas v. Buddies Food Store*, 518 S.W.2d 534 (Tex.1975), "the duties owed by a landowner depend upon the role of the person injured...." *Id.* at 536. But before a duty may be imposed on the defendant, it is necessary that the injury occur *"on his premises." Id.; See also Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex.1983).

In *Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452 (Tex.1972), the court set out some of the basic issues for a conventional occupier-invitee case. Imposing upon the plaintiff the burden at trial to prove the existence and violation of a legal duty owed by the defendant, the court tendered the following issue as "appropriate" for submission:

### Plaintiff's Issues

1. Defendant created or maintained a dangerous condition (stating it) on its premises.

483 S.W.2d at 458 n. 2; *See also* 483 S.W.2d at 455 n. 1.

█ In the instant case, there was no issue submitted to the jury inquiring whether the County was the owner or occu-

pier of the premises. By objecting, the County not only preserved error, but also laid the predicate to prevent the trial judge from making a finding on the omitted issue. TEX.R.CIV.P. 279.

This Court has held that under Rule 279, "where the plaintiff fails to request an issue an affirmative finding to which is essential to plaintiffs' recovery, and the issue is not submitted, judgment must be rendered for the defendant." *Bueno v. Globe Indemnity Co.*, 441 S.W.2d 643, 648 (Tex.Civ.App.—Corpus Christi 1969, no writ).

█ Proof of ownership is an essential element in a premises defect case. In that no issue was submitted to the jury and such issue may not be deemed found because of the County's proper objection to the charge, any judgment founded on premises defect must be reversed and judgment rendered that plaintiff take nothing. For all of the above reasons, appellant's points of error one, two and five are sustained. Since these points dispose of the appeal, it is not necessary to address the other points.

## CROSS–POINT

In a single cross-point, Velasquez attacks the constitutionality of the Texas Tort Claims Act and requests this Court to declare the limitation of liability to violate the equal Protection clause of the fourteenth amendment of the United States Constitution.

█ For this Court to consider this cross-point, the appellee must have in some manner apprised the trial court of his dissatisfaction with the judgment. *Tenngasco Gas Gathering Co. v. Fischer*, 653 S.W.2d 469 (Tex.App.—Corpus Christi 1983, no writ); *Saenz Motors v. Big H. Auto Auction, Inc.*, 653 S.W.2d 521 (Tex. App.—Corpus Christi 1983, aff'd 665 S.W.2d 756 (Tex.1984). Appellee directs this Court to no exception to the judgment. Therefore, the cross-point of error cannot be considered on appeal.

The judgment of the trial court is reversed and judgment here rendered that appellee take nothing by his suit.

## ON MOTION FOR REHEARING

On motion for rehearing, appellee asserts that we erred in our decision because the County had judicially admitted in a pleading in another case that the boat ran aground on waters under the control of the County. For the reasons stated below, we disagree that the statement was a "judicial admission." Because of the confusion that exists among some of the bench and bar in this area of the law, a review of some of the relevant principles of law is warranted. First, the factual setting.

After the KERRY DANCER ran aground on a sandbar in the Gulf of Mexico, the owners were unsuccessful in removing the boat. Sometime *after* Velasquez was injured, the County filed a suit for an injunction to require the owner and Coastal Diving to remove the boat. In its verified pleading, the County alleged that the "owner ... did then fail to have the boat removed from the waters of Cameron County ..." and that "after repeated demands ... Defendants did, and continue to refuse to remove the said KERRY DANCER from the beach of Andy Bowie Park." In its prayer, the County requested of the court that the defendants be "temporarily enjoined from allowing the vessel, the KERRY DANCER, to remain on Plaintiff's property and from allowing the said vessel, or parts thereof, to remain a hazard to users of the public beaches of the residents of Cameron County...." This pleading was admitted into evidence over this County's objection.

As stated in McCormick & Ray, Texas Law of Evidence:

> Unfortunately the term "admission" has for a long time been used without discrimination to cover two distinct situations. In one sense of the term, admission refers to a formal act, done in the course of judicial proceedings, which dispenses with the production of evidence and takes the matter out of the domain of proof so that neither court nor jury is required to make any finding in regard to it. This formal judicial admission as it may be termed is really a substitute for evidence. Such admissions include facts admitted by pleadings.... As long as the pleading remains unamended or the admission stands unretracted, the fact alleged or admitted, for the purposes of the case, is accepted as true by the court and jury and binding on the party making it, i.e. he cannot introduce evidence to contradict it.[1]

The other principle to which the term is applied is the subject of the present chapter [Admissions Of A Party]. It authorizes the receipt of any statement or conduct of a party inconsistent with his present position. These are often spoken of as extra-judicial admissions in an effort to distinguish them from the formal judicial admissions. As suggested by Professor Wigmore, they might more accurately be termed quasi-admissions. Instead of dispensing with evidence these admissions form a part of the evidence and are admitted as an exception to the hearsay rule.[2]

> An admission, being merely a piece of evidence, is not conclusive on the party against whom it is offered. The admission not being conclusive, he may offer evidence in contradiction or explanation of it or even deny that he made the admission in question.

2 C. McCormick & R. Ray, Texas Law of Evidence Civil and Criminal §§ 1127–28 (Texas Practice 2d Ed. 1956).

Also, §§ 1144 and 1145 of McCormick & Ray, Texas Law of Evidence, state as follows:

> § 1144. Admissions in Pleadings—(a) Pleadings in the Same Cause
>
> [T]he pleadings in a particular case, for the purposes of use in *that case*, are to be regarded as formal judicial admissions

---

1. Neither the Texas nor Federal Rules of Evidence deal with the subject of *judicial* admissions.

2. Under Rule 801(e)(2) Tex.Rules of Evidence an admission is not hearsay.

rather than ordinary admissions. They are not evidence but a waiver of evidence. In taking advantage of the admission the process is not one of putting the pleading in evidence but one of invoking the language of the opponent's pleadings as rendering certain facts indisputable. In other words the fact admitted is assumed, without the introduction of the pleading or presentation of other evidence to be conclusively established for the purposes of a particular case. Occasionally, however, the courts are found sanctioning the introduction of the pleading itself in evidence. This is unfortunate in that it leads the unwary to believe that the principle involved is that of ordinary admissions when in fact it is that of formal judicial admissions. (Emphasis added.)

See also *J.A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728, 733–34 (Tex.Civ.App.— Amarillo 1967, writ ref'd n.r.e.).

§ 1145. Admissions in Pleadings—(b) Pleadings in Other Causes

[U]nder the reformed systems of pleading, like that in Texas, pleadings in other actions which contain statements inconsistent with the party's present position are receivable as admissions.

See also *St. Paul Fire & Marine Insurance Co. v. Murphree*, 163 Tex. 534, 357 S.W.2d 744, 747 (1962).

Our Supreme Court has written about this area of the law as follows:

A party's testimonial declarations which are contrary to his position are quasi-admissions. They are merely some evidence, and they are not conclusive upon the admitter. (Citations omitted.) The weight to be given such admissions is decided by the trier of fact. These are to be distinguished from the true judicial admission which is a formal waiver of proof usually found in pleadings or the stipulations of the parties. A judicial admission is conclusive upon the party making it, and it relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it. (Citations omitted.)

A quasi-admission will be treated as a judicial admission if it appears:

(1) That the declaration relied upon was made during the course of a judicial proceeding....

(2) That the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony....

(3) That the statement is deliberate, clear, and unequivocal. The hypothesis of mere mistake or slip of the tongue must be eliminated....

(4) That the giving of conclusive effect the declaration will be consistent with the public policy upon which the rule is based.

(5) That the statement is not also destructive of the opposing party's theory of recovery.

*Mendoza v. Fidelity & Guaranty Insurance Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex.1980); *see also Kirk v. Head*, 137 Tex. 44, 152 S.W.2d 726, 729 (1941); *William B. Roberts, Inc. v. McDrilling Co.*, 579 S.W.2d 335, 344–45 (Tex.Civ.App.—Corpus Christi 1979, no writ).

The Supreme Court has also written that:

Assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions. Any fact admitted is conclusively established in the case without the introduction of the pleadings or presentation of other evidence.

The facts alleged or admitted in the live pleadings of a party are accepted as true by the court and jury and are binding on the pleader. 1A R. Ray, Texas Law of Evidence, § 1127 (Texas Practice 3d ed. 1980). The party relying on his opponent's pleadings as judicial admissions of fact, however, must protect his record by objecting to the introduction of evidence contrary to that admission of fact and by objecting to the submission of any issue bearing on the fact admitted.

*Houston First American Savings v. Musick*, 650 S.W.2d 764, 767, 769 (Tex.1983).

784

With the above principles in mind, we hold that the statements made by the County in the injunction pleading do not constitute a *judicial admission* that the KERRY DANCER ran aground on land owned or occupied by Cameron County. The statement did amount to an *admission* which the County had a right to and did contest. Therefore, in order to sustain the judgment, it was Velasquez' burden to have submitted and obtained an affirmative finding on the issue that the County owned or controlled the land in question. Furthermore, Velasquez did not contend in the trial court that this pleading was a *judicial admission* so as to dispense with the necessity of evidence on the point. They treated the matter as a disputed issue by introducing evidence thereon, particularly on the issue of the County's control of the premises. The question of the pleading being a judicial admission was raised for the first time on the motion for rehearing. This question was therefore waived. *Carter v. Walton,* 469 S.W.2d 462 (Tex.Civ.App. —Corpus Christi 1971, no writ); *Dallas Transit Company v. Young,* 370 S.W.2d 6, 11 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.).

For these reasons we overrule appellee's motion for rehearing and adhere to our original disposition.