George **PONDER**

v.

**MORRISON–KNUDSEN COMPANY, et al.**

Civ. A. No. B–85–1373–CA.

United States District Court,
E.D. Texas,
Beaumont Division.

March 31, 1988.

Gilbert T. Adams, Jr., Law Office of Gilbert T. Adams, Beaumont, Tex., for plaintiff.

Barclay A. Manley, Fulbright & Jaworski, Houston, Tex., for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

### I.

Defendant, Morrison-Knudsen Company (Morrison) contracted with Carbocol to construct a coal mining facility in Columbia, South America. To prepare its construction supplies for shipment by sea from the United States to South America, Morrison subcontracted with International Export Packing Company (Interpack). Interpack agreed to pack and preserve in the Port of Beaumont the materials and supplies which Morrison needed to construct the coal mine in Columbia, South America. Interpack leased from the Port of Beaumont a warehouse at which Interpack was to perform the packing and preserving services for Morrison. Morrison had a legitimate interest in seeing that its intricate, expensive, heavy equipment purchased in the United States of America arrived at the Columbian mine site in good, usable condition, free from spoilage, corrosion, or other defects which might result from Interpack's failure or malfeasance. To protect this legitimate interest, Morrison had its employee Ron McClure present at Interpack's leased warehouse space to ascertain that Interpack properly performed its contractual duties. On the occasion made the basis of this diversity action, George Ponder (Ponder) worked for Interpack at the warehouse space it leased from the Port of Beaumont.

On March 16, 1984, McClure asked Ponder and other Interpack employees to lift

and move a large, heavy railroad switch to make certain it was properly sealed against salt air and water.[1] No one, including Ponder and McClure, knew the weight of the railroad switch. Initially, two or three men unsuccessfully attempted to lift the switch. However, Ponder, with the aid of five or six other men, tried to lift the switch a second time. During the second lift, one or more of the men stumbled and dropped one end of the switch, throwing additional weight onto Ponder and injuring him.

Ponder filed suit seeking recovery for the injuries he sustained as a result of Morrison's negligence. Morrison filed a third party action against Interpack, seeking indemnity for any damages Morrison might be required to pay to Ponder. The case proceeded to trial, with the return of a jury verdict in favor of Ponder and against Morrison in the amount of $226,408.93. The jury found Morrison negligent, did not find Interpack negligent, but decided that Ponder was 25 percent contributorily negligent.

Morrison now moves to set aside the jury's verdict and requests the court to enter judgment non obstante veredicto in its favor.

## II.

### TESTING THE PLAINTIFF'S CASE

When seeking relief in tort, a plaintiff is entitled to a favorable jury verdict only if he proves by a preponderance of the evidence that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach was a proximate cause of damages to plaintiff. *Abalos v. Oil Development Co. of Texas*, 544 S.W.2d 627, 631 (Tex.1976);

Conversely, a defendant in a tort action may attack a verdict rendered against him, provided he moved for a directed verdict, by showing that the facts and inferences, when viewed in the light most favorable to the plaintiff, point so strongly and over-

whelmingly in favor of the defendant that reasonable minds could not conclude that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached a duty to the plaintiff, or (3) the defendant's breach was a proximate cause of plaintiff's injury. *See generally, Boeing Co. v. Shipman*, 411 F.2d 365, 374–375 (5th Cir.1969).

In deciding a motion for judgment n.o.v., the court's inquiry is two-fold. First, the court must determine what facts must be established in order to invoke the rule of liability at issue in the case. Second, the court must determine, after viewing the evidence in the light most favorable to the plaintiff, whether the facts and inferences point so strongly in favor of the defendant that reasonable people could not conclude that the plaintiff established the facts necessary to support a plaintiff's jury verdict. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969). If reasonable minds could not conclude in favor of the plaintiff, then the court must render a judgment for the defendant. However, if reasonable minds could conclude that the plaintiff established the requisite facts to support a favorable jury verdict under the applicable law, the plaintiff's verdict will withstand the defendant's attack. The court's role is to determine what facts are necessary under the applicable law to establish liability, and whether conflicts in substantial evidence exist. *Id.* at 374–375. A jury's role is to resolve conflicts in substantial evidence. *Id.* at 375. Thus, if a conflict over substantial evidence exists concerning a material operative fact, the fact question must be submitted to the jury.

## III.

### A.

Morrison attacks the duty element of Ponder's case in two ways. First, Morrison argues that it cannot be held liable under the rule of liability enunciated in *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985),[2] because, the degree of control

---

1. The testimony is disputed as to whether McClure asked or ordered Ponder to lift the switch, or whether Ponder and the other Interpack employees lifted the switch in the regular flow of work. The testimony revealed the switch weighed between 500 and 600 pounds.

2. In *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985), the Texas Supreme Court adopted into Texas law § 414 of the Restatement (2d) of Torts:

it exercised over Ponder's work, if any, was insufficient to impose any duty. Second, Morrison argues in the alternative, even assuming it exercised sufficient control to invoke the *Redinger* rule, its status as a buyer on Interpack's premises did not subject it to the rule in the first place. Therefore, it cannot be held liable as a matter of law.

## 1. MORRISON'S DEGREE OF CONTROL

The court rejects Morrison's degree of control argument.

In allocating legal responsibility based upon the degree of control attributable to a particular defendant, it is fundamental that the "right to control" remains the supreme test. *See, e.g., Newspaper, Inc. v. Love,* 380 S.W.2d 582, 591 (Tex.1964) ("right of control" determines the existence of a master-servant relationship); *Dodd v. Twin City Fire Ins. Co.,* 545 S.W.2d 766, 768 (Tex.1977) ("right to control" the manner and details of the employee's work is determinative of whether the borrowed servant doctrine applies); *Producer's Chemical Co. v. McKay,* 366 S.W.2d 220, 225 (Tex. 1963); *see also, Bucyrus Co. v. Fogle Equipment Corp.,* 712 S.W.2d 202, 204 (Tex.App.—Houston [14th Dist.] 1986, no writ). Thus, whether a particular defendant is subject to the duty expressed in *Redinger* depends upon the degree of control the defendant has a *right* to exercise. Though the ultimate factual inquiry is "right of control," the degree of control actually exercised may be considered as indicia of a defendant's right of control. *See, e.g., Love, supra.*

In *Redinger,* the Texas Supreme Court stated that § 414 of the Restatement (2d) of Torts (1977) applies:

> When the employer retains some control over the manner in which the independent contractor's work is performed, but does not retain the degree of control which would subject him to liability as a master....
>
> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the

The employer's role must be more than a general right to order the work to start or stop, to inspect progress or receive reports.... He may retain the power to direct the order in which the work shall be done, or to forbid its being done in the manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principle of agency, but he may be liable under the rules stated in this Section [414] unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injuries to others.

*Redinger,* 689 S.W.2d at 418.

In the instant case, although there is a dispute as to whether McClure, acting on behalf of Morrison, ordered, instructed, or requested Ponder to manually lift the railroad switch, judgement n.o.v. standards require the court to view evidence in the light most favorable to the party opposed to the motion. *Boeing, supra.* In so viewing the evidence, the court concludes that reasonable minds could find from the evidence that McClure in fact ordered Ponder to manually lift the switch. Moreover, the court concludes that a reasonable mind could infer from the evidence the following:

(1) By expressly ordering Ponder and others to lift the switch manually, McClure implicitly forbade Ponder and others from using any other means to move the switch;

(2) Due to the business relationship between Interpack and Morrison, Ponder felt obligated to comply with Morrison's order, even though he knew Morrison could not fire him;

(3) In ordering Ponder to lift the railroad switch, McClure was acting pursuant to what he thought he had a legal right to do because of Morrison's and Interpack's contractual relationship;

employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.
Restatement (2d) of Torts § 414 (1977).

(4) McClure's orders actually controlled how the railroad switch was to be lifted and handled;

(5) McClure's actual exercise of control was evidence of (a) Morrison's legal right to control the particular work at issue, and more specifically, (b) the parties' true intention under the purchase order contract, or at least evidence of the parties' intention to modify the terms of their agreement.

(6) Morrison, as evidenced by McClure's actions, reserved the contractual right to oversee and decide how certain items such as the railroad switch were to be handled in order to protect its interest in seeing that its intricate, expensive heavy equipment arrived at the Columbia mine site in good, usable condition, free from spoilage, corrosion or other defects which might have resulted from Interpack's mis-, mal, or nonfeasance.

(7) Morrison's right to control how certain items were to be lifted and handled went beyond mere inspection. Morrison, through McClure, specifically ordered Interpack's employees how to lift the switch, apparently to prevent it from being damaged. Such specific control was of such a degree as to subject it to liability under § 414, but insufficient to subject it to liability under either a master-servant or agency theory. For example, the contract between the parties expressly indicated Interpack was an independent contractor, which tends to rule out the master-servant or agency theories.

The court holds that these findings and inferences, based upon the evidence, are reasonable and sufficient to impose upon Morrison a duty, under § 414, to exercise its degree of control with reasonable care.

### 2. MORRISON'S "STATUS PLUS CONTROL" CONTENTION

Morrison advances a "status plus control" interpretation of *Redinger* by contending that there is a basic foundational requirement under the rule in *Redinger's* case:

> [T]he defendant must be the owner-occupier of the premises or the general contractor on a construction site before liability may be imposed.

Morrison's *Motion for Judgment Notwithstanding the Verdict* at 11. Morrison explains this foundational requirement as follows:

> The law presumes the general contractor to have stepped into the shoes of the owner when in control of the premises pursuant to a construction agreement and charges the general contractor with the same duty as the owner-occupier.

*Id.* at 11. Finally, Morrison concludes that:

> The premises were owned by the Port of Beaumont and leased solely to Interpack. [Therefore, Morrison could not be considered the "owner" of the premises.] Before this lawsuit started, Morrison-Knudsen and Interpack signed a purchase order, not a construction agreement. [Therefore, Morrison could not be considered the "occupier" of the premises.] . . . .
>
> Only when the defendant *is* the owner/occupier of the premises and *does* exercise sufficient control over the work performed on the premises can the defendant be liable under the *Redinger* exception. The "control over the work" exception enunciated in *Redinger* need not be addressed since *Morrison-Knudsen does not meet the preliminary requirement of being the owner/occupier of the premises.* (emphasis in original).

*Reply to Plaintiff's Response to Motion for Judgment Notwithstanding the Verdict,* at 2 and 3. Morrison attempts to bolster its position by arguing that in every case since *Redinger,* the Texas courts have affirmed this basic foundational requirement.

■ For the reasons set forth below, the court rejects Morrison's "status plus control" interpretation of *Redinger,* and holds that Morrison is indeed subject to the rule in *Redinger's* case.

The court disagrees with Morrison's contention that the Texas courts have affirmed the basic foundational requirement it urges upon the court today. The court can find no case where any Texas or Fifth Circuit Court has expressly addressed and affirmed the position advanced by Morrison. In the absence of definitive statutory or

decisional law, the court must predict how the Texas Supreme Court would resolve the instant question: whether a party can only be liable under § 414, by assuming control of the premises, in whole or in part, pursuant to a *construction* agreement, and only a construction agreement.

Any interpretation of *Redinger* must of course begin with *Redinger*. There, the court considered, among other things, whether a general contractor has a duty to a sub-contractor's employee. The court held that it did under § 414 of the RESTATEMENT (2d) OF TORTS. In so holding, the court reasoned as follows:

> An owner or occupier of land has a duty to use reasonable care to keep the premises under his control in a safe condition. *Smith v. Henger,* [148 Tex. 456] 226 S.W. 2d 425 (Tex.1950). A general contractor on a construction site, who is in control of the premises, is charged with the same duty as an owner or occupier. *Id.,* 226 S.W.2d at 431.

*Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex.1985).

Unfortunately, the *Redinger* court never expressly addressed the question of how a general contractor obtains the right of control over the premises. Fortunately, *Smith, supra,* and *Newspaper, Inc. v. Love,* 380 S.W.2d 582 (Tex.1964) are enlightening.

In *Smith,* the Texas Supreme Court recognized the general principle that "when the owner [or occupant of land] puts some other person in control of the premises, or part of them, such person likewise has the duty to keep the premises under his control in safe condition." Citing *Fox v. Dallas Hotel Co.,* 111 Tex. 461, 240 S.W. 517 (1922), *overruled on other grounds, Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 925 (Tex.1981). In *Fox,* the Supreme Court of Texas held that a defendant taking over the control of an elevator in a building pursuant to a maintenance contract became charged with the common law duty to one rightfully using the elevators to exercise ordinary care to maintain them in a condition of reasonable safety for use, even though no privity of contract existed between the defendant and the injured plaintiff. *Fox,* among other things, stands for

the proposition that one may assume control over premises, in whole or in part, pursuant to an express contract. The contract in *Fox* was not a construction contract, but rather, a maintenance contract. By tracing the line of authority from *Redinger* to *Fox,* the court deduces that in § 414 cases where the allocation of the right of control is at issue, the type of contract between the parties is irrelevant. Rather, the court concludes that the proper query is: To whom has the right of control been contractually allocated?

*Morrison* contends that:

> [The contract] entered into between Interpack and Morrison-Knudsen expressly provides that Interpack shall comply with all laws, rules, and regulations in the performance of its work. *See* Defendant Exhibit 1, at 22. Nowhere in the purchase order is Morrison-Knudsen authorized or empowered to direct safety practices, meetings, or correct safety violations on Interpack premises. Rather, the purchase order is clear that Interpack was an independent contractor and fully responsible for the safety of its own employees. *See* Defendant Exhibit 1, at 17.

Morrison's *Motion for Judgment Notwithstanding the Verdict,* at 5.

While it is true that parties may expressly allocate the right of control pursuant to a written contract, an express written contractual allocation of the right of control does not always shield a defendant from liability. The parties, by acting inconsistently with the original terms of the contract, may expressly or impliedly alter their contractual relationship. *Id. Newspaper, Inc. v. Love,* 380 S.W.2d 582, 590 (Tex. 1964). In *Love,* the court articulated these principles in terms of allocating the right of control:

> [T]he "exercise of control" necessarily presupposes a right to control which must be related to some agreement, express or implied. This is fundamental.
>
> . . . .
>
> The assumption of an exercise of control [to establish a master-servant relationship] must be so persistent and the acqui-

escence therein so pronounced as to raise an inference that at the time of the act or omission giving rise to liability, the parties by implied consent and acquiescence had agreed that the principal might have the right to control the details of the work.

*Newspaper v. Love, supra* at 590 and 592. Although the court in *Love* discussed these principles in the context of deciding whether a master-servant relationship or an employer-independent contractor relationship could be inferred from the evidence, the court considers these principles applicable to the instant case, because they go directly to how parties may allocate the right of control via contract, either expressly or impliedly. The *Redinger* court itself looked to the defendant's specific actions in concluding that the defendant had contractually retained a degree of control sufficient to impose liability under § 414, even though it hired independent subcontractors:

> When the concrete trucks arrived at the site, Yargo ordered Baird to immediately move the dirt to another location. Yargo exercised supervisory control by coordinating the work performed by two subcontractors. Living, Inc., owed a duty to Redinger to exercise this supervisory control in a reasonable manner.

*Redinger* at 418. By so referring to the defendant's action, the *Redinger* court, by example, embraced and applied the principle that the right of control may be allocated by an implied contract.

In the instant case, the jury was given the written contract between the parties and evidence of Morrison's actual control was introduced. Viewing the evidence in the light most favorable to the plaintiff, the court concludes that a reasonable mind could infer the following from the evidence introduced at trial:

**3.** *See, for example, City of Denton v. Van Page,* 701 S.W.2d 831, 835 (Tex.1986) (held defendant not liable for dangerous condition on premises, reasoning that premises liability hinges on a showing that the defendant owned, occupied, or controlled the premises, or created a dangerous condition on the premises). In *City of Denton* the Supreme Court of Texas did not focus on the status of the defendant *per se,* but rather, looked to the element of control to determine whether the defendant was subject to liability:

(1) The written contract did not definitively allocate the right of control over how certain items were to be handled, either manually or by forklift or otherwise;

(2) McClure's actual exercise of control and Ponder's acquiescence in attempting to lift an object weighing between 500 and 600 pounds, indicates that the parties originally intended to vest in Morrison the right of controlling how certain items, such as the railroad switch, were to be lifted, or that the parties impliedly modified the terms of the contract in the course of performing the actual packing and preserving services.

The court holds that such inferences were reasonable and subjected Morrison to liability under § 414.

Aside from arguing that one can only step into the shoes of an owner-occupier pursuant to a construction agreement, Morrison attempts to characterize itself as a mere purchaser on the seller's premises, and argues that such status shields it from liability under *Redinger.*

■ The court considers Morrison's "status" analysis misplaced. The ultimate question is not whether Morrison was or was not a general contractor, or mere purchaser, but rather, whether Morrison obtained, via an express or implied contract, the legal right to control the activity at issue on the premises. It is the right of control which carries with it the attendant duties of care, not Morrison's status *per se.*[3] Therefore, whether Morrison is subject to § 414 depends on whether Morrison was legally put in control of the activities at issue on the premises, or a part of them, by the owner or occupier. *See, Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 431 (1950). The evidence supports just such a

> Ordinarily, a person who does not own the real property must assume control over, and responsibility for the premises before there will be liability for a dangerous condition existing on the real property. It is possession and control which generally must be shown as a prerequisite to liability.

*City of Denton v. Van Page,* 701 S.W.2d at 835.

finding, and thus Morrison is subject to § 414.

In rejecting Morrison's status argument, the court does not intimate that status is wholly irrelevant to the issue of control. Status is useful in tracing the right of control from its source—the owner or occupier—and identifying in whom it is vested. However, Morrison's status *per se* is not the touchstone of liability in this case.

The transferable duties which the law imposes upon "owners" or "occupiers" of land in essence arise from the legal right to control the land owned or occupied; one of the legal consequences of "owning" or "occupying" is that one has the right to control the premises, unless that right has been transferred, in whole or in part, to another. It is axiomatic, then, that a showing of ownership or occupancy is *prima facie* evidence of the legal right of control which gives rise to certain legal duties. Thus, for example, where ownership is at issue, one may introduce evidence of actual control to prove ownership. *See, Cameron County v. Velasquez*, 668 S.W.2d 776, 780 (Tex.App.—Corpus Christi [13th Dist.] 1984, writ ref'd n.r.e.). As well, it stands to reason, where the right of control is at issue, one may introduce evidence of ownership or actual possession to prove in whom the right of control is vested.

Once there is competent evidence indicating that the owner or occupier may have transferred the legal right of control to another party, the presumption that the "owner" or "occupier" is vested with the "right of control" disappears. Once the owner or occupier rebuts the presumption, there is a substantial conflict over the right of control. The fact finder must then resolve the conflict.

In this case, it was undisputed that the Port of Beaumont owned the premises in question, and leased them to Interpack, making Interpack the occupier of the premises. It was also undisputed that Interpack and Morrison entered into an independent contractual relationship, whereby Morrison, among other things, obtained the contractual right to be, at least, on the premises to observe and oversee the packing and preserving operations. However, it was bitterly disputed whether pursuant to their dealings, Morrison obtained and retained the legal right to control any of Ponder's work. The dispute over the right of control constituted a conflict in substantial evidence which required the court to submit the factual dispute to the jury in the form of a duty instruction.[4] In this case, the evidence showed that there was a direct conflict over the right of control, a fact which must have been attributable to Morrison before subjecting it to the *Redinger* duty. Accordingly, it was the province of the jury to resolve the factual dispute over right of control, which they did in favor of the plaintiff. The court cannot say that the jury's resolution of the "right of control" question was unreasonable. There is competent evidence indicating Morrison in fact exercised control as to how to move the railroad switch. Moreover, viewing the evidence in the light most favorable to the plaintiff, and taking such facts as true for purposes of this motion, the court concludes that Morrison indeed obtained and retained the right of control over the particular activities in which Ponder was ordered to engage, and thus, Morrison owed a duty to Ponder under § 414.

In response to Morrison's motion, Ponder alternatively argues that even if Morrison

---

4. While it is true that a legal duty under a *given* statement of facts and circumstances is essentially a question of law, *ex facto jus oritur; Bryant v. Gulf Oil Corp.*, 694 S.W.2d 443, 446 (Tex.App.—Amarillo [7th Dist.] 1985, writ ref'd n.r.e.), where the underlying facts necessary to impose a recognized legal duty are not given, but rather are disputed, the litigants are entitled to have the jury find the facts which are necessary to support the legal conclusion that the defendant owed a duty to the plaintiff. *See, e.g., Cameron County v. Velasquez,* 668 S.W.2d 776, 780 (Tex.App.—Corpus Christi [13th Dist.] 1984,

writ ref'd n.r.e.) (it is the obligation of plaintiff to secure a finding that the defendant was the owner or occupier in control of the premises in a premises defect case before liability will be imposed); *City of Austin v. Schmedes,* 270 S.W. 2d 442, 446 (Tex.Civ.App.—Austin 1954) (defendant not entitled to have duty question submitted to the jury because "[t]he facts regarding the relationship of each [defendant] to each *other and to this controversy and all inferences* to be drawn therefrom are of an undisputed nature."), *reversed in part on other grounds,* 279 S.W.2d 326 (Tex.1955).

owed no duty to him under *Redinger*, it owed him a duty under either Section 324A of the Restatement (2d) of Torts (1965);[5] *Seay v. Travelers Indemnity Co.*, 730 S.W.2d 774, (Tex.App.—Dallas 1987)[6] or under the general common law principle of reasonable care.[7]

Having viewed the facts in the light most favorable to the plaintiff and concluding that the facts and inferences reasonably support the conclusion that Morrison owed a duty to Ponder under *Redinger*, the court considers it unnecessary and inappropriate in light of *Erie* to resolve Ponder's alternative duty contentions. Suffice it to say that the jury was instructed as to duty consistent with the court's ruling today.

### B.

■ Morrison next argues that it cannot be negligent as a matter of law for asking plaintiff to lift a switch, the weight and dimensions of which were as plainly observable to Ponder as to Morrison. The court agrees with Ponder when he suggests that such an argument is nothing more than an attempt by Morrison to argue "open and obvious" as a matter of law. As stated by the court in *Bennett v. Span Industries, Inc.*, 628 S.W.2d 470, 473 (Tex. App.—Texarkana 1982, writ ref'd n.r.e.):

> The defenses of no duty, assumption of the risk, open and obvious have all been abolished as absolute defenses in negligence case in Texas. *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978); *Farley v. M.M. Cattle Company*,

[529 S.W.2d 751] *supra,* and authorites there cited. The reasonableness of the conduct of the defendant, as well as the plaintiff, is now determined by the principles of negligence and contributory negligence. *Parker v. Highland Park, Inc., supra* at 517.

Under principles of comparative negligence, the jury is assigned the task of allocating negligence between the parties if the facts so warrant. This jury reasonably found Ponder 25 percent contributorily negligent, and the court does not think that Ponder's negligence was of such high degree as to bar Ponder's recovery as a matter of law. Therefore, the court rejects Morrison's open and obvious argument.

■ Additionally, Morrison cites the case of *Robertson v. Texas & N.O. R. Co.* 133 S.W.2d 819, 821 (Tex.Civ.App.—Dallas 1939, writ dism., judgm. cor.) for the rule that a man is the best judge of his own strength and lifting capacity, and that his judgment should control as a matter of law. In *Robertson*, the plaintiff was injured while lifting a rail weighing 990 pounds. The court in *Robertson* classified the case as a "strain case." The court placed the consequences of overtaxing the plaintiff's strength upon the plaintiff, since the plaintiff assumed the risk of injury as a matter of law by lifting an object to great for his strength. The present case is distinguishable from *Robertson*. Unlike the plaintiff in *Robertson*, Ponder's injuries did not result merely from lifting or over-exertion, but from the sudden unexpected drop-

---

**5.** One who undertakes, gratuitiously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:

    (a) His failure to exercise reasonable care increases the risk of such harm, or,

    (b) He has undertaken to perform a duty owed by the third person, or,

    (c) The harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (2d) of Torts, § 324A (1965).

**6.** Although no Texas court explicitly adopted Section 324A, the Court of Appeals in *Seay* found the substantive rule under 324A was applied in *Fox v. Dallas Hotel Co.*, 111 Tex. 461,

240 S.W. 517, 520–21 (1922). The court reasoned that the adoption of Section 323 in *Colonial Savings Ass'n, Taylor,* 544 S.W.2d 116, 119 (Tex.1976) necessarily implied the validity of Section 324A as Texas law. The only difference between the two sections is that 323 relates to the duty owed to the person for whom the services are rendered, while Section 324A relates to the duty owed to third parties.

**7.** The general common law duty of reasonable care has been described as the duty to act as a reasonable prudent person would act under the same or similar circumstances, considering the reasonably foreseeable risk or probability of injury to persons similarly situated as plaintiff. *See, Bennett v. Span Industries, Inc.,* 628 S.W.2d 470, 473–74 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.).

ping of one end of the railroad switch by a fellow employee, which threw the weight of the object onto Ponder. Ponder could not have assumed the risk of injury as a matter of law because of the unexpected actions of his co-employees. Thus, *Robertson* is inapplicable to the present action on its facts, even assuming for the sake of argument that assumption of the risk were an absolute defense today.

### C.

■ Morrison further contends that judgment notwithstanding the verdict is appropriate in the present case, since Ponder's own negligence or the negligence of his co-workers was the sole cause or a new and independent cause of his injuries.

Morrison maintains that, as a matter of law, the conduct of Ponder and his co-workers in lifting the switch was the sole cause or a new and independent cause of Ponder's injuries in the following ways:

(1) Ponder was a skilled and experienced lifter of 17 years, was familiar with proper lifting techniques, and knew of the risk posed by lifting the switch yet made no attempt to gather the proper help or obtain a forklift to move the switch gear safely.

(2) McClure merely requested or asked Ponder for help in moving the switch, a non-obligatory command; therefore, such a request, if negligent at all, is superceded by the actions of Ponder and his co-workers in lifting the switch a second time.

Proximate cause is that cause, which in a natural and continuous sequence, unbroken by any new and independent cause, produces the injury, and without which the injury would not have occurred. *Cook Consultants, Inc. v. Larson,* 700 S.W.2d 231, 236 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Proximate cause consists of (1) a cause in fact, and (2) foreseeability, and must be established by probative evidence, not by mere conjecture or guess. *Exxon Corp. v. Quinn,* 726 S.W.2d 17 (Tex.1987). Texas courts define "new and independent cause" as an act or omission of a separate and independent agency which destroys a causal connection between the negligent act or omission of the defendant and the

plaintiff's injury. *Bornmann v. Great Southwest General Hospital, Inc.,* 453 F.2d 616, 623–24 (5th Cir.1971); *Galvan v. Fedder,* 678 S.W.2d 596, 598 (Tex.App.— Houston [14th Dist.] 1984, no writ). It is a well settled rule that one's conduct cannot be a proximate cause if another's conduct is the sole proximate cause of the injury. *Plemmons v. Gary,* 321 S.W.2d 625, 626 (Tex.Civ.App.—Beaumont 1959, no writ). Sole proximate cause pertains to neither conduct of the plaintiff, nor that of the defendant, but to a third party, whose conduct would be solely causative of the occurrence at issue. *American Jet, Inc. v. Leyendecker,* 683 S.W.2d 121, 126 (Tex.App.— San Antonio 1984, no writ).

It is the opinion of the court that there was sufficient evidence to contradict Morrison's contentions and support the jury's verdict.

As to proximate cause, the evidence established that *but for* McClure's order, Ponder would not have been injured while attempting to move the switch. Thus, cause in fact was established. Further, it was foreseeable that injury might result from McClure's instruction.

The evidence indicated that Ponder and his co-workers were never required to lift a railroad switch or any other object of this nature prior to the occasion causing Ponder's injury. No attempt was made by McClure or Morrison to determine the weight of the railroad switch prior to asking Ponder and the other workers to move the switch. McClure testified that he was not provided with any means of determining the weight of the switch. Morrison provided no safety programs, training outlines, or instructions to InterPack or its employees regarding lifting procedures, nor was there an attempt by Morrison to follow the guidelines and procedures of its own safety manual.

Morrison's director of safety, Benjamin Rietze, testified that workers should be provided adequate training and instruction with a view toward preventing accidents prior to being assigned to carry any heavy object. Morrison's own supervisor, McClure, admitted that he was not given any instructions on proper lifting proce-

dure. Dr. Brennan, plaintiff's expert, testified that Morrison violated industry standards in instructing Interpack employees to move the railroad switch without the use of mechanical equipment, and by failing to provide proper supervision and direction necessary to provide Ponder and other employees of Interpack with a safe working environment.

The above evidence shows, in the court's opinion, that a reasonable mind could conclude that (1) McClure's instruction to Ponder and other Interpack employees created a dangerous and hazardous condition which in fact caused Ponder's injury, and (2) McClure, acting on behalf of Morrison, should have foreseen that his order, if followed, would subject Ponder to the dangerous and hazardous condition which in fact caused Ponder's injury, or likely could have caused a similar injury.

Further, the evidence does not support Morrison's contention that the action of Ponder's co-workers was the sole cause, or a new and independent cause of Ponder's injury. In this respect, it was foreseeable that McClure's instruction burdened Ponder's co-workers with carrying an object too heavy to handle. McClure's instruction increased the probability that the coworkers would stumble under the strain and allow the switch to fall, thereby causing Ponder's injury. Thus, it cannot be said that the action of Ponder's co-workers alone broke the causal connection between Morrison's negligence and Ponder's injury.

### D.

█ As its final argument, Morrison argues alternatively that by virtue of the fact Ponder was assigned to work under the direction of Morrison, Ponder must, as a matter of law, be a borrowed employee, because Morrison was controlling the details of Ponder's work.

A "borrowed servant" is one who, while in the general employ of another, is subject to the rights of another employer or his agents, to direct and control the details of the particular work being done, and is not merely cooperating with suggestions of the other employer. Thus, the "right to control the details" of the employees' work is determinative of the borrowed employee issue. *J.A. Robinson Sons, Inc. v. Wigart,* 431 S.W.2d 327 (Tex.1968).

Morrison had the burden of proving that Ponder became its employee. In this respect, the court in *In Re Dearborn Marine Service, Inc.,* 499 F.2d 263, 285 (5th Cir. 1974), held that there was a presumption that the original employment continued:

> The original employment relationship is presumed to continue unless the temporary employer's control over the worker is so pervasive as to be inconsistent with that presumption. *See, Kiff v. Travelers Ins. Co.,* 402 F.2d 129 (5th Cir.1968); *Producers Chemical Co. v. McKay,* 366 S.W.2d 220 (Tex.1963); Restatement (2d), *Agency,* § 227, Comment b. Factors helpful in deciding whether a new employment relationship has replaced the old are the extent of the temporary employer's control over details of work, his furnishing of the necessary tools, his right to discharge the employees, and his obligations for payment. *See, Ruiz v. Shell Oil Co.,* 413 F.2d 310 (5th Cir. 1969); Restatement (2d) *Agency,* § 220. Agreements among the parties assigning responsibility for supervising the worker are additional guides. *Compare, Magnolia Pet. Co. v. Francis,* [169 S.W.2d 286] *supra.*

The jury expressly found that Ponder was not Morrison's borrowed servant by answering Interrogatory No. 5, "We do not." [8]

As the court held that reasonable minds could find that Morrison had a right of control of a degree sufficient to subject it to liability under § 414, the court also holds that reasonable minds could conclude that

---

**8.** Interrogatory No. 5 stated:

"Do you find from a preponderance of the evidence that George Ponder was a 'borrowed employee' of Morrison-Knudsen Company on the occasion in question?

A 'borrowed employee' is one who, while in the general employment of one employer, is subject to the right of another employer or his agents to direct and control the details of the particular work inquired about and is not merely cooperating with suggestions of such other employer."

the degree of control which Morrison had a right to exercise was not so great as to consider Ponder the borrowed servant of Morrison. The jury's answer to Interrogatory No. 5 is not unreasonable. The Restatement itself recognizes that one may be liable under § 414, even though the degree of control was insufficient to create a master-servant or borrowed servant relationship. *See Redinger, supra,* and Comment c of § 414 Restatement (2d) of Torts (1977). For example, there was no evidence that Ponder was told he would be changing his employ from Interpack to Morrison, or that Ponder expressly or impliedly agreed to such a change. Furthermore, by arguing two mutually exclusive positions—no control and then alternatively, virtual complete control—reasonable minds could have chosen to reject Morrison's borrowed servant argument on credibility grounds alone. As a result, a reasonable mind could have concluded that no employer/employee relationship existed between Morrison and Ponder.

### IV. CONCLUSION

For the reasons set forth above, Morrison's motion for judgment notwithstanding the verdict is hereby DENIED.