Rudy DE LA PENA, Dalia De La Pena, and Diana De La Pena, Appellants,

v.

Theo ELZINGA and James C. Hopkins, as Trustee of The Comanche Investment Trusts, Appellees.

No. 13–97–372–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 5, 1998.

Rehearing Overruled Dec. 17, 1998.

Steven P. Redgate, San Antonio, for Appellant.

Bernard T. Halloran, Houston, Darrell Davis, King, Guerra & Davis, Mission, Cecile Foy Gsanger, Chaves, Gonzales & Hoblit, Corpus Christi, for Appellee.

Before HINOJOSA, YAÑEZ, and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Appellants Rudy De la Pena, Dalia De la Pena, and Diana De la Pena appeal from the granting of two motions for partial summary judgment in favor of appellees Theo Elzinga and James C. Hopkins as Trustee of the Comanche Investment Trusts. The question

presented by the De la Penas in this appeal is whether Texas courts will assist a grantor in recovering property or damages arising from the refusal of the grantee to reconvey the property conveyed by the grantor if such conveyance was made in an attempt to hinder, delay or defraud the grantors' creditors. Following a long line of precedent, we answer the question in the negative.

Due to the many bank failures in the late 1980's, Rudy and Dalia De la Pena experienced severe financial difficulties. The FDIC had declared insolvent several of the banks with whom the De la Penas did business, and it was calling in the notes owed by the De la Penas on several pieces of real property. Other lienholders were also threatening foreclosure of their liens.

The De la Penas contend Elzinga gained the confidence of Diana De la Pena and advised her to convince her parents to transfer all of the De la Penas' real property[1] to him or the Comanche Investment Trust and then file for bankruptcy. Elzinga allegedly assured the De la Penas that upon the completion of the bankruptcy proceedings, he would reconvey the property to them. The

De la Penas further contend that based on Elzinga's representations, they conveyed their property to him and filed for bankruptcy. In January 1993, the De la Penas made demand upon Elzinga for the return of the properties. When Elzinga refused, the De la Penas filed suit, alleging common law fraud, statutory fraud, conversion, and requesting the imposition of a constructive trust. Both defendants answered and Elzinga also filed a counterclaim.

Elzinga and Hopkins filed a motion for partial summary judgment asserting the De la Penas are not entitled to a reconveyance of six of the properties (the Six Properties), because the alleged secret agreement between Elzinga and the De la Penas to reconvey the Six Properties to the De la Penas was an illegal attempt to delay, hinder or defraud the De la Penas' creditors. Three weeks later, Elzinga and Hopkins filed a second motion for partial summary judgment asserting the same argument with respect to the other six properties (the Rudlumnk Lots). The trial court granted both motions and severed the De la Penas' suit from Elzinga's counterclaim, resulting in a final, appealable judgment.

---

1. There are twelve parcels of property at issue in this case. The first six properties, (a)—(f), will be referred to as "the Six Properties." The remaining properties, (g) and (h), will be referred to as "the Rudlumnk Lots."

    (a) Lot 1, and the East 45 feet of Lot 2, Block 1, Citrus Terrace addition to the City of Weslaco, Hidalgo County, Texas, according to the map or plat thereof recorded in Volume 12, Page 39, Map Records of Hidalgo County, Texas, also known as 1601 North Texas Boulevard, Weslaco, Texas 78596.

    (b) Lot 5, Block 1, De la Pena Subdivision, an addition to the City of Weslaco, Hidalgo County, Texas, according to the map or plat thereof recorded in Volume 21, Page 80, Map Records of Hidalgo County, Texas, also known as 1721 Nebraska, Weslaco, Texas 78596.

    (c) Lot 4, Block 2, De la Pena Subdivision, an addition to the City of Weslaco, Hidalgo County, Texas, according to the map or plat thereof recorded in Volume 21, Page 80, Map Records of Hidalgo County, Texas, also known as 1716 Nebraska, Weslaco, Texas 78596.

    (d) Lot 8, Block 2, De la Pena #2 Subdivision, an addition to the City of Weslaco, Hidalgo County, Texas, according to the map or plat thereof recorded in Volume 20, Page 78, Map

    Records of Hidalgo County, Texas, also known as 507 Paisano Street, Weslaco, Texas 78596.

    (e) Lot 10, Frost Proof Heights, an addition to the City of Weslaco, Hidalgo County, Texas, according to the map or plat thereof recorded in Volume 3, Page 24, Map Records of Hidalgo County, Texas.

    (f) Lot 7, Block 5, De la Pena Subdivision, an addition to the City of Weslaco, Hidalgo County, Texas, according to the map or plat thereof recorded in Volume 21, Page 80, Map Records of Hidalgo County, Texas, also known as 316 [sic 314] Delma Street, Weslaco, Texas 78596.

    (g) Lots 13, 17, 18, 19, and 20, Block 1, De la Pena #2 Subdivision, an addition to the City of Weslaco, Hidalgo County, Texas, according to the map or plat thereof recorded in Volume 20, Page 78, Map Records of Hidalgo County, Texas.

    (h) The North 34.253 acres, more or less of Farm Tract No. 125, Block 162, West Tract Subdivision, Hidalgo County, Texas, according to the map or plat thereof recorded in Volume 2, Page 34, Map Records of Hidalgo County, Texas. SAVE AND EXCEPT the North 2.25 acres, more or less, being the same tract conveyed to O.S. Reeves by Warranty Deed recorded in Volume 745, Page 439, Deed Records of Hidalgo County, Texas.

■ The crux of the De la Penas' first issue is that Elzinga and Hopkins were not entitled to summary judgment on their affirmative defense of illegality of contract because they failed to prove the De la Penas intended to defraud their creditors. When a defendant establishes as a matter of law that an essential element of a plaintiff's cause of action does not exist or establishes as a matter of law all of the elements of its affirmative defense, the defendant is entitled to summary judgment. *Rosas v. Buddie's Food Store*, 518 S.W.2d 534, 537 (Tex.1975); *Castillo v. Tropical Tex. Ctr. for Mental Health & Mental Retardation*, 962 S.W.2d 622, 624 (Tex.App.—Corpus Christi 1997, no writ). And, while a summary judgment may not normally be granted on the basis of the plaintiff's pleadings alone, *Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex. 1974), pleadings may be considered in determining whether a legally enforceable claim has been asserted. *Reyna v. City of Weslaco*, 944 S.W.2d 657, 660 (Tex.App.—Corpus Christi 1997, no writ).

For purposes of this opinion, we accept as true all of the De la Penas' allegations set out in their original petition. *Poe v. Hamlin Nat'l Bank*, 921 S.W.2d 515, 517 (Tex.App.—Eastland 1996, writ denied). After doing so, however, we are compelled to find that the representations made by the De la Penas in their pleading constitute judicial admissions that as a matter of law preclude their recovery.

■ A judicial admission is a formal waiver of proof usually found in pleadings or the stipulations of the parties which relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it. *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex.1980). The public policy underlying this rule is that it would be unjust to permit a party to recover after he has sworn himself out of court by clear, unequivocal testimony. *United States Fidelity & Guar. Co. v. Carr*, 242 S.W.2d 224, 229 (Tex.Civ. App.—San Antonio 1951, writ ref'd).

The De la Penas' position, as asserted in their original petition, is clear. They are seeking imposition of a constructive trust and damages because Elzinga and Hopkins refused to reconvey to the De la Penas property that the De la Penas had transferred to Elzinga in order to protect them from imminent foreclosure by their lienholders. In other words, the conveyance to Elzinga was made to hinder, delay, or defraud the De la Penas' creditors. *See generally* Tex. Bus. & Com.Code Ann. § 24.005(a)(1) (Vernon Supp. 1998) (transfer by a debtor is fraudulent as to a creditor if the debtor made the transfer with the actual intent to hinder, delay, or defraud the creditor).

The Eastland Court of Appeals was presented with the same situation in *Poe*. In that case, George Poe sued the Hamlin National Bank and Bank President W.T. Johnson, alleging fraudulent breach of contract, loss of business opportunity, and intentional infliction of emotional distress. *Poe*, 921 S.W.2d at 516.[2] Based on his execution of a guaranty agreement, Poe had received demand for the payment of $1,000,000 to Citicorp Industrial Credit, Inc. Fearing that Citicorp would sue him and take his oil and gas properties, Poe took a copy of the demand to Johnson, his long-time friend and banker. Poe owed the Bank a substantial amount of money, none of which was secured by deeds of trust or other security agreements. Poe alleged that Johnson told him, "Let me protect [the property] for you." The Bank prepared and Poe signed deeds of trust and other security agreements in favor of the Bank covering Poe's oil and gas properties.

In 1984, Citicorp obtained a judgment against Poe for $1,000,000, plus costs and attorney's fees. Poe testified that Johnson believed the Bank should foreclose on Poe's properties to prevent Citicorp from pursuing the Bank's liens on the assets. Poe told Johnson it did not make any difference to him if the Bank foreclosed on his properties because Poe had his agreement with Johnson and the Bank that they would protect his properties. The Bank foreclosed on Poe's properties in 1987.

**2.** All factual recitations to *Poe* are cited as 921 S.W.2d at 516.

Poe ultimately learned that Johnson and the Bank did not intend to keep the agreement to reconvey the properties to Poe and he sued. The trial court granted the Bank and Johnson's motion summary judgment. On appeal, the Eastland court affirmed the summary judgment, relying on the well-established rule that courts will not aid a grantor to regain property transferred to a grantee in order to defraud creditors. *Poe*, 921 S.W.2d at 516.

The San Antonio Court of Appeals also subscribes to this rule. In *Dellerman v. Mangold*, 271 S.W.2d 720 (Tex.Civ.App.—San Antonio 1954, writ ref'd), the plaintiff had conveyed property to his daughter for the expressed purpose of avoiding levy upon the property by his creditors. The daughter, Mangold, refused to reconvey the property to Dellerman and he brought a trespass to try title suit against her. The court of appeals upheld the trial court's grant of summary judgment in favor of Mangold, opining,

[t]he point in this case is rather shocking. Dellerman gained a judgment in 1938 that he did not own the property, by proving that his deed to his daughter was not made for the purpose of defrauding his creditors. Having defeated his creditors back in 1938, he now urges that he does own the property because the deed to his daughter was executed only as a device to defeat his creditors. All the other points in the case converge around this fact. For Dellerman to set aside his deed to Mrs. Mangold he must prove that it was executed and recorded to defraud his creditors, but when he does that he loses his case under the law. The Supreme Court has closed the door to grantors who shield their property from the just claims of creditors and later seek to recover from their grantee in whom was placed the apparent title. If everything happened that Dellerman claims, he has no enforceable right. This is so for reasons of public policy, to discourage fraudulent transactions. The courts leave the parties in the position in which they have placed themselves.

*Dellerman*, 271 S.W.2d at 721.

█ Long before the San Antonio court expressed its shock in *Dellerman*, the su-

preme court enunciated the rule which we apply today, that being,

any agreement of the grantee to hold the land in trust and to reconvey it to the fraudulent grantor cannot be enforced, because the courts will not aid a party in carrying out a fraud; and the court will not give a fraudulent grantor or anyone claiming under him any relief from his own fraudulent act.

*La Force v. Bracken*, 141 Tex. 18, 169 S.W.2d 465, 467 (Tex.1943); *see also Lott v. Kaiser*, 61 Tex. 665, 673 (1884); *Rogers v. Rogers*, 240 S.W. 1104, 1105 (Tex. Comm'n App.1922) (equity will leave the parties to fraudulent transactions in the position in which they have placed themselves, refusing all affirmative aid to either of the fraudulent participants).

By alleging in their original petition that the purpose of conveying the Six Properties and the Rudlumnk Lots to Elzinga was to prevent foreclosure of the properties, the De la Penas have affirmatively pleaded themselves out of a cause of action. Following *LaForce*, *Dellerman*, and *Poe*, we conclude the trial court did not err in granting the partial summary judgments, thereby leaving the De la Penas in the position in which they placed themselves. Issue number one is overruled.

█ In their second issue, the De la Penas claim the relief afforded by the court's judgment exceeded the scope of relief requested by Elzinga and Hopkins. We disagree. All of the De la Penas' causes of action emanate from the same purported agreement, which we have already held to be illegal and unenforceable. Thus, the trial court did not err in granting summary judgment on the entirety of the De la Penas' claims. Issue number two is overruled.

The judgment of the trial court is AFFIRMED.