**DOWELANCO, Appellant,**

v.

**Anacleto Rios BENITEZ, Appellee.**

**No. 13–97–780–CV.**

Court of Appeals of Texas, Corpus Christi.

Oct. 7, 1999.

---

Terry L. Jacobson, Attorney at Law, Corsicana, for Appellant.

Jose R. Guerrero, Montalvo & Ramirez, McAllen, for Appellee.

Before Chief Justice SEERDEN and Justices HINOJOSA and YAÑEZ.

## OPINION

Opinion by Justice YAÑEZ.

The sole issue in this appeal is whether the trial court properly dismissed a suit based on a lack of personal jurisdiction over the defendant. We reverse and remand.

DowElanco alleges Anacleto Rios Benitez ("Rios"), a Mexican citizen, executed a $1,000,000 promissory note payable to DowElanco Mexico in Mexico. The purpose of the note was to secure a line of credit extended by DowElanco Mexico to Rajsa S.A. de C.V., a corporation owned and controlled by Rios. Rajsa distributed insecticides, pesticides, and herbicides purchased from DowElanco Mexico. When Rios defaulted on the note,[1] DowElanco Mexico assigned the note to DowElanco, an affiliated company that maintains an office in Texas and conducts business in Texas.[2]

DowElanco filed a lawsuit in federal court seeking to recover on the note. Rios was personally served with process in the federal suit and filed an answer on August 21, 1995, stating "[d]efendant admits the allegations in paragraph I of Plaintiff's original petition that he is an alien residing in Hidalgo County...."[3] The federal court dismissed the suit without prejudice because DowElanco failed to allege or establish complete diversity of citizenship.

DowElanco filed the instant lawsuit in state court on December 1, 1995, seeking to recover on the same note. After two attempts at personal service failed, the trial court found that "3701 North First Lane, West McAllen, Texas 78504 has been shown to be a correct residential address for [Rios]" and authorized substituted service at the McAllen residence. On July 17, 1996, the sheriff served Rios by posting the citation and petition on the front door of the McAllen residence. On August 12, 1996, Rios filed a special appearance objecting to personal jurisdiction. The trial court sustained Rios's objection and dismissed DowElanco's action. The trial court's order found that Rios

established minimum contacts with the State of Texas, but the court does not have jurisdiction of [Rios's] person because to exercise in personam jurisdic-

---

1. The outstanding balance on the note is approximately $400,000.

2. DowElanco is a joint venture, owned by Rofan Services, a Delaware corporation, and Eli Lilly, S.A., a Swiss corporation. DowElanco Mexico is a Mexican corporation and a wholly-owned subsidiary of DowElanco B.V., which is owned by Rofan Services and EPCO, Inc., an Indiana corporation. Thus, DowEl-anco claims it and DowElanco Mexico are under common ownership and control.

3. Paragraph I of Plaintiff's Original Petition in the federal case states: "Anacleto Rios Benitez is an alien who resides in Hidalgo County, Texas. He may be served with process at his residence at 3701 N. First Lane, West McAllen, Texas 78504."

tion over [him] would not comport with traditional notions of fair play and substantial justice guaranteed by the Due Process Clause of U.S. Constitution, and therefore [Rios's] motion objecting to the jurisdiction should be sustained.

DowElanco requested findings of fact and conclusions of law. The trial court asked the parties to submit proposed findings of fact and conclusions of law and the parties complied; however, the court never issued findings of fact and conclusions of law. We presume that the trial court made the necessary findings to support its judgment. Implied findings of fact cannot be invoked, however, when the evidence establishes as a matter of law the issue to be determined. *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987).

Implicit in the trial court's order is a determination Rios is not a Texas resident for jurisdictional purposes. DowElanco challenges the order, arguing Rios is a Texas resident. Alternatively, DowElanco asserts that even if Rios is not a Texas resident, the trial court had *in personam* jurisdiction because Rios was served in Texas and the exercise of personal jurisdiction does not violate federal due process requirements.

■ In order to succeed on his objection to personal jurisdiction, Rios was required to negate all bases of *in personam* jurisdiction. *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982). In determining whether he met his burden, we review all the evidence that was before the trial court, including the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony. TEX.R. CIV. P. 120a; *J & J Marine, Inc. v. Le*, 982 S.W.2d 918, 924 (Tex.App.—Corpus Christi 1998, no pet.).

■ The existence of personal jurisdiction is a question of law that must sometimes be preceded by the resolution of underlying factual disputes. *J & J Marine*, 982 S.W.2d at 924. Thus, appellate courts generally apply a sufficiency of the evidence standard of review when reviewing special appearances. *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex.App.—Dallas 1993, writ denied). However, the appellate court conducts a *de novo* review when applying the law to the facts. *See Billingsley Parts and Equip., Inc. v. Vose*, 881 S.W.2d 165, 169 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (reversing trial court's dismissal of a suit based on lack of *in personam* jurisdiction where few facts were in dispute and the dispute centered around the legal effect of the facts); *see also Hotel Partners v. Craig*, 993 S.W.2d 116, 120 (Tex.App.— Dallas 1994, pet. denied) (holding correct standard of review is *de novo* when reviewing trial court's order granting special appearance where issue was the proper application of the jurisdictional formula of "minimum contacts" and "fair play and substantial justice").

■ Few facts in this case are disputed. The primary issues are whether the trial court properly applied Texas law concerning residence, judicial admissions, and federal due process to the facts. Thus, we review *de novo* whether Rios is a Texas resident for jurisdictional purposes.

The generally accepted meaning of the term "residence" is the "[p]lace where one actually lives or has his home; a person's dwelling place or place of habitation; ... a dwelling house." *Owens Corning v. Carter*, 997 S.W.2d 560, 571 (Tex.1999) (citing BLACK'S LAW DICTIONARY 907 (abridged 6th ed.1991)). The Texas Supreme Court recognized that the meaning to be given the term "residence" "depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Volition, intention, and action are all elements to be

considered in determining where a person resides...." *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex.1964) (holding a candidate for county office met six-month residency requirements under election code where he attended law school in another county, never spent a night in the county, visited the county, entered into an employment contract there, and declared an intention to become a resident of that county upon graduating). An individual may have more than one residence. *Texas Highway Dept. v. Kimble County*, 239 S.W.2d 831, 832 (Tex.Civ.App.—Austin 1951, writ ref'd n.r.e.); *see D.C. Hall Co. v. State Highway Comm'n*, 330 S.W.2d 904, 907 (Tex.Civ. App.—El Paso 1959, writ ref'd n.r.e.) (company may be resident of Mississippi and Texas at the same time).

DowElanco argues that Rios judicially admitted in the federal court litigation that he is a Texas resident and that this admission is conclusive in the present case. We agree. A judicial admission is a formal waiver of proof, usually found in pleadings or the stipulations of the parties, that dispenses with the production of evidence on an issue and bars the admitting party from disputing it. *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex.1980); *De La Pena v. Elzinga*, 980 S.W.2d 920, 922 (Tex. App.—Corpus Christi 1998, no pet.). This rule is based on the public policy that it would be unjust to permit a party to recover after he has sworn himself out of court by clear, unequivocal testimony. *De La Pena*, 980 S.W.2d at 922 (citing *United States Fidelity & Guar. Co. v. Carr*, 242 S.W.2d 224, 229 (Tex.Civ.App.—San Antonio 1951, writ ref'd)).

Pleadings in a particular case, for purposes of use in that case, are regarded as formal judicial admissions. *Cameron County v. Velasquez*, 668 S.W.2d 776, 782–83 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) (on rehearing) (cita-

tions omitted). Pleadings in another case that are inconsistent with a party's position in a present action are quasi-admissions, but are generally not conclusive. *Id.* However, a quasi-admission is treated as a judicial admission when it appears: (1) the declaration was made during the course of a judicial proceeding; (2) the statement is contrary to an essential fact embraced in the declarant's theory of recovery or defense; (3) the statement is clear and deliberate, and not a mistake; (4) giving conclusive effect to the admission will not be contrary to the public policy on which the rule is based; and (5) the statement is not destructive of the offering party's theory of recovery. *Id.* (citing *Mendoza*, 606 S.W.2d at 694).

The statement in this case obviously satisfies all of the requirements, except perhaps the third one. Because Rios's admission of Texas residency was part of his successful argument that the federal court lacked subject matter jurisdiction because there was no diversity of citizenship, we are also satisfied the statement in question was deliberate and not a mistake. We hold that Rios's pleadings in the federal court case admitting he was an Hidalgo County resident on August 21, 1995 must be given conclusive effect in this case.

We now examine the record. In his deposition, Rios stated he and his wife purchased a house in McAllen, Texas in 1989. Rios also claimed he transferred his interest in the residence to his family. However, the record contains only one deed showing Rios and his wife as grantees of the residence and property. Rios stated that his wife and children resided in the McAllen house from 1990 to May of 1995. Rios's children attended private school in Texas until May of 1995. Rios also testified that he used to come to Texas to pick up checks for Mexican businesses that had exported produce or other products to Texas companies "every now and then." Rios said he used to stay at

the McAllen house two or three days per month and now stays there six to eight days a year. Rios pays the gas, electric, and telephone bills for the house. Rios holds a Texas driver's license and applied for a social security number in Texas. Rios stated he has held a United States tourist visa since 1959 and has maintained a bank account at a McAllen bank for twenty to twenty-five years. Rios files income tax returns in the United States, employs an accountant located in McAllen, maintains both life and health insurance in Texas, and is a member of a social service club based in McAllen. For three or four months, Rios owned a business in McAllen that ceased to exist at the beginning of 1995. Finally, when asked how he learned about the present lawsuit, Rios answered, "Information arrived to [sic] my address in McAllen."

The record also contains Rios's affidavit, in which he states he currently resides in San Rafael, Veracruz, Mexico, has lived there for the last twenty-three years, and has "never resided anywhere in the State of Texas." In light of his judicial admission establishing Texas residency as a matter of law, these statements have no probative value. Notwithstanding the importance of Rios's intent in determining residency, there is no evidence in the record to suggest any change in Rios's residence between August 21, 1995, when he judicially admitted his Hidalgo County residency, and December 1, 1995, when the instant suit was filed. We hold Rios was a Texas resident on December 1, 1995, the date the lawsuit was filed, and therefore, the trial court had personal jurisdiction over him.

■■■■ Even assuming, for the sake of argument, that Rios had established non-resident status, however, the exercise of

personal jurisdiction over him by a Texas court is proper. The broadly-interpreted Texas long-arm statute permits state courts to exercise personal jurisdiction over non-resident defendants under certain circumstances,[4] see TEX. CIV. PRAC. & REM.CODE § 17.042, and extends as far as the federal constitutional requirements of due process allow. Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991); Billingsley, 881 S.W.2d at 168. The federal due process inquiry is a two-part test: (1) whether the nonresident defendant purposely established "minimum contacts" with the forum state; and (2) whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice. Guardian Royal, 815 S.W.2d at 226; Schlobohm v. Schapiro, 784 S.W.2d 355, 357–58 (Tex. 1990).

■■■■ Rios stipulated that he established minimum contacts with Texas, but argues that the assertion of personal jurisdiction over him violates traditional notions of fair play and substantial justice. We recognize that under minimum contacts analysis, jurisdiction may be either specific, when the cause of action arises from a particular activity in the forum state, or general, when the defendant's activities in the forum are continuous and systematic, but the cause of action does not arise from his actions in the forum state. Schlobohm, 784 S.W.2d at 357. Once minimum contacts are established, the burden is on the defendant to present a compelling case that the exercise of jurisdiction is unreasonable. Guardian Royal, 815 S.W.2d at 231 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)) (holding that even where minimum contacts were established, requiring an English insurer to submit a

---

4. DowElanco emphasizes in its brief that it has never relied on the long-arm statute to serve Rios.

dispute with an English insured to a foreign nation's judicial system did not comport with fair play and substantial justice). As the Texas Supreme Court recognized in *Guardian Royal,* when the nonresident defendant establishes minimum contacts, "[o]nly in rare cases ... will the exercise of jurisdiction not comport with fair play and substantial justice." *Id.* at 231; *see Schlobohm,* 784 S.W.2d at 357–58 ("Because minimum contacts analysis now encompasses so many considerations of fairness, it has become less likely that the exercise of jurisdiction will fail fair play analysis.").

We must consider various factors in determining whether a Texas court's exercise of jurisdiction over Rios is reasonable. These factors include: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Guardian Royal,* 815 S.W.2d at 228 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). When the defendant is a resident of a foreign country, rather than another state, the following additional factors must be considered: (1) the unique burdens placed upon the defendant who must defend himself in a foreign legal system; and (2) the procedural and substantive policies of other nations whose interests are affected as well as the federal government's interest in its foreign relations policies. *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113–15, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

Even though Rios had the burden of showing that the exercise of jurisdiction over him was unreasonable, Rios presented virtually no evidence on the relevant factors.

### Burden on Rios

Rios never offered any evidence as to how defending this suit would affect him. However, he argues in his brief that having to defend a suit in Texas would be burdensome because he would have to hire lawyers in the United States, experts on Mexican commercial law and commercial paper (who would presumably be from Mexico), and translators; discovery would prove problematic; and he would have to pay for travel and lodging for himself and his experts.

Rios has engaged in a multitude of activities in Texas for the last two decades: employing an accountant, banking in Texas, purchasing land and a home, owning a business, and participating in service organizations. Any burden on Rios is minimized by his presence in Hidalgo County for other activities and the availability of a house in McAllen for lodging. Modern travel and communications also reduce the burden placed on Rios. Having engaged in sophisticated activities in this state in the past, Rios is capable of participating in the Texas legal system. We conclude that defending a suit in Texas, rather than Mexico, does not substantially burden Rios.

### DowElanco's Interest

On the other hand, DowElanco has articulated a significant interest in obtaining relief in Texas. DowElanco argues that because Rios has bank accounts and property in the state, it will be more convenient and efficient for it to enforce a judgment from a Texas court, rather than a Mexican court.

To counter DowElanco's argument, Rios points to Texas procedures for enforcing money judgments rendered in foreign countries. *See* Tex. Civ. Prac. &

Rem.Code Ann. §§ 36.001—36.008 (Vernon 1997). The procedure for recognizing a foreign judgment includes filing an authenticated copy of a foreign judgment with a court clerk and providing notice to the judgment debtor. TEX. CIV. PRAC. & REM.CODE ANN. §§ 36.0041, 36.0042 (Vernon 1997). Under certain circumstances, the judgment debtor may contest recognition of the foreign judgment. TEX. CIV. PRAC. & REM.CODE §§ 36.0044, 36.005 (Vernon 1997). Because the certification of a foreign judgment is a separate, possibly contested legal proceeding, it may add another step to enforcing a judgment. Obtaining a Mexican judgment is not as convenient and efficient for DowElanco as obtaining a Texas judgment.

### Texas's Interest

Rios asserts Texas has no interest in keeping this litigation here because Dow-Elanco's parent company will actually benefit from the collection of the note; the note is not exclusively assigned to DowElanco; and no Texas residents have been injured by any act in Texas because the suit is the product of an assignment. He further contends the taxpayers of Hidalgo County should not have to bear the expense of litigation unrelated to this county and Hidalgo County should not be a haven for forum-shopping litigants.

Even though the note was executed in Mexico, it was subsequently assigned to a corporation that conducts substantial business in Texas. There is evidence that DowElanco has an office in Texas, employs fifteen Texas residents, and sells approximately $35,000,000 worth of products in this state annually. Texas has an economic interest in ensuring that businesses located here can collect debts in its courts. We cannot say that Texas residents are not affected by this litigation. Moreover, given Rios's numerous activities in Hidalgo County and his assets here, filing suit in this forum appears to be logical.

### Efficient Resolution of Controversies

Rios argues Mexican courts are more efficient because DowElanco has already obtained a judgment in a separate suit to recover on a note against Rajsa, filed in a Mexican court eight days after the present action. We are not persuaded that comparing the instant litigation to one other case in a foreign legal system supports this conclusion.

### Policies of the United States and Mexico

Finally, we cannot ignore the current economic atmosphere and the policies of the United States and Mexico with regard to free trade between these nations. We see no foreign relations impediment to the exercise of jurisdiction over Rios.

This is a suit for collection of a debt related to commercial activity. The creditor is located in Texas and the alleged debtor has assets in Texas. Based on our evaluation of all the relevant factors, we hold the exercise of personal jurisdiction over Rios does not violate federal due process requirements.

Having determined the exercise of personal jurisdiction over Rios is proper under two separate theories, we need not address whether jurisdiction is proper by virtue of Rios's service by substituted service pursuant to Texas Rule of Civil Procedure 106(b). *See* TEX.R.APP. P. 47.1.

Because Rios failed to negate all bases of *in personam* jurisdiction, the trial court erred in sustaining his objection to personal jurisdiction and dismissing DowElanco's action. The judgment of the trial court is REVERSED and REMANDED for proceedings consistent with this opinion.

Concurring Opinion by Chief Justice ROBERT J. SEERDEN.

Opinion by Chief Justice SEERDEN.

I agree with the majority's disposition of this case, but write separately to express my reasoning.

The majority relies on an admission in the federal lawsuit that Rios was "an alien residing in Hidalgo County" to support the assertion of personal jurisdiction. However, "residence" or "domicile" is a term of art with regard to the requirements for personal jurisdiction, and it is not established by conclusory allegations that the defendant does, or does not, "reside" in a particular state at a particular time before the lawsuit was filed.

Conclusory statements are generally not considered competent evidence. *Hidalgo v. Surety Sav. & Loan Assoc.*, 487 S.W.2d 702, 703 (Tex.1972); *Gordon v. Western Steel Co.*, 950 S.W.2d 743, 749 (Tex.App.— Corpus Christi 1997, pet. denied). This is especially true when conclusory statements are countered by allegations that set out in detail the factual basis for negating the particular conclusion. *City of Harlingen v. Vega*, 951 S.W.2d 25, 32 (Tex. App.—Corpus Christi 1997, no writ).

In the present case, Rios disputes residence in Texas by his affidavit that alleges a present residence in Mexico, though he admits to frequent contacts with Texas. Accordingly, I would not assume personal jurisdiction based on a vague prior allegation of residence. Rather, I would look to the test for asserting jurisdiction over a nonresident according to his continuing and substantial contacts with the state of Texas.

The United States Supreme Court divides the federal due process requirements for personal jurisdiction over a nonresident defendant into two parts: (1) whether the nonresident defendant has purposely established "minimum contacts" with the forum state; and (2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985); *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

As the majority states, Rios stipulated that he had "minimum contacts" with Texas sufficient to support the first part of the test for personal jurisdiction over a nonresident. Accordingly, there is no need to rely upon prior admissions or other evidence to show minimum contacts.

Rather, I believe that this Court should concentrate solely on the facts of record to show the second part of the test concerning fair play and substantial justice.

As Rios presented virtually no evidence to show that litigating in Texas would be a burden, that the policy interests of Mexico would be adversely affected, or any other reason to deny personal jurisdiction based on considerations of fair play and substantial justice, I agree with the majority that, when the facts are examined according to the second part of the test for compliance with federal due process, there is nothing unfair about extending personal jurisdiction over Rios. Therefore, I agree that the trial court erred in sustaining the objection to personal jurisdiction and dismissing the present action.