# NO. 12-19-00375-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF L.W.,* | *§* | *APPEAL FROM THE* |
| *D.R., A.M., A.M., AND P.R.,* | *§* | *COUNTY COURT AT LAW NO. 2* |
| *CHILDREN* | *§* | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

R.R. appeals the judgment of the trial court appointing permanent managing conservators of her children, L.W.1,[1] D.R., A.M.1,[2] A.M.2, and P.R. We affirm.

## BACKGROUND

R.R. is the mother of L.W.1, D.R., A.M.1, A.M.2, and P.R.[3] L.W.1's and D.R.'s father is L.W. A.M.1's, A.M.2's, and P.R.'s father is A.M. On April 25, 2018, the Department of Family and Protective Services (the Department) filed an original petition for protection of L.W.1, D.R., A.M.1, A.M.2, and P.R., for conservatorship, and for termination of R.R.'s parental rights. The Department was appointed temporary managing conservator of the children, and R.R. and the fathers of the children were granted limited access to, and possession of, the children.

On November 1, 2019, the trial court entered a final order in suit affecting the parent-child relationship regarding A.M.1, A.M.2, and P.R. only. The trial court appointed the Department as permanent managing conservator of the children, and appointed the mother, R.R., and father,

---

[1] The father and child have the same initials. We will refer to the child as L.W.1.

[2] The father and two of his children have the same initials. We shall refer to the children as A.M.1 and A.M.2.

[3] R.R. is the mother of three other children who were a part of the initial suit, M.R., J.R., and A.R. On November 1, 2019, the trial court ordered a "monitored return" of these children to R.R.'s home. The trial court ordered that the Department continue to serve as temporary managing conservator of the children. The children, M.R., J.R., and A.R., are not a part of this appeal.

A.M., as possessory conservators with possession of, and access to, the children. On the same date, the trial court entered a final order in suit affecting the parent-child relationship regarding L.W.1 and D.R. only. The trial court appointed fictive kin, J.E., as permanent managing conservator of the children, and appointed the mother, R.R., and father, L.W., as possessory conservators with possession of, and access to, the children. The court found that J.E., as a nonparent appointed as permanent managing conservator, had the rights and duties specified in Section 153.371 of the Texas Family Code, including the right to designate the primary residence of the children. Further, L.W. was ordered to pay child support for L.W.1 and D.R. This appeal followed.

### INDIAN CHILD WELFARE ACT

In her first issue, R.R. argues that the trial court erred by failing to give proper notification pursuant to the Indian Child Welfare Act (ICWA) and failing to determine if the children, L.W.1, D.R., A.M.1, A.M.2, and P.R., are Indian children under the ICWA. We previously abated this appeal and remanded the case to the trial court with instructions to (1) provide proper notice that complies with the statutory notice requisites of the ICWA; (2) conduct a hearing to determine whether L.W.1, D.R., A.M.1, A.M.2, and P.R. are Indian children under the ICWA; and (3) cause a record of the proceedings to be prepared and make appropriate findings as to whether L.W.1, D.R., A.M.1, A.M.2, and P.R. are Indian children.

The trial court provided proper notice that complied with the statutory notice requisites of the ICWA, conducted a hearing to determine whether the children, L.W.1, D.R., A.M.1, A.M.2, and P.R., were Indian children under the ICWA, and caused a record of the proceedings to be prepared. On April 20, 2020, the trial court found that A.M.1, A.M.2, and P.R. are not members of an Indian tribe, are not eligible for membership in an Indian tribe, and are not Indian children within the definitions of the ICWA. On the same date, the trial court found that L.W.1 and D.R. are not enrolled in any Indian tribe or eligible for membership in any Indian tribe. Thus, L.W.1 and D.R. are not Indian children within the definitions of the ICWA. Because the trial court determined that the children were not Indian children according to the ICWA, R.R.'s first issue is overruled as moot. *See **In re J.R.**, 501 S.W.3d 738, 750 (Tex. App.—Waco 2016, no pet.) (appellate court prohibited from deciding moot controversies).

In her second issue, R.R. argues that the trial court erred in entering a judgment based on an oral agreement at trial because there was no evidence that she personally and orally consented to the agreement in open court as required by Rule 11 of the Texas Rules of Civil Procedure. The Department disagrees, contending that R.R. failed to preserve this issue and even if she had preserved error, R.R. made a judicial admission that prevented her from disputing the agreement.

## Applicable Law

Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed, and filed with the papers as part of the record, or unless it be made in open court and entered of record. TEX. R. CIV. P. 11. A judicial admission is a formal waiver of proof, usually found in pleadings or the stipulations of the parties, that dispenses with the production of evidence on an issue and bars the admitting party from disputing it. *Lee v. Lee*, 43 S.W.3d 636, 641 (Tex. App.—Fort Worth 2001, no pet.); *Dowelanco v. Benitez*, 4 S.W.3d 866, 871 (Tex. App.—Corpus Christi 1999, no pet.). As long as the statement stands unretracted, it must be taken as true by the court and jury; it is binding on the declarant and she cannot introduce evidence to contradict it. *Lee*, 43 S.W.3d at 641. This rule is based on the public policy that it would be unjust to permit a party to recover after she has sworn herself out of court by a clear, unequivocal statement. *Lee*, 43 S.W.3d at 641; *Dowelanco*, 4 S.W.3d at 871.

The elements required for a judicial admission are (1) a statement made during the course of a judicial proceeding; (2) that is contrary to an essential fact or defense asserted by the person making the admission; (3) that is deliberate, clear, and unequivocal; (4) that, if given conclusive effect, would be consistent with public policy; and (5) that is not destructive of the opposing party's theory of recovery. *Lee*, 43 S.W.3d at 641-42. Counsel's statements on behalf of a client may serve as judicial admissions if they satisfy this rule. *Id.* at 641; *Sepulvedo v. Krishnan*, 839 S.W.2d 132, 135 (Tex. App.—Corpus Christi 1992, no pet.); *Cohen v. Tour Partners, Ltd.*, No. 01-15-00705-CV, 2017 WL 1528776, at *5 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, no pet.) (mem. op.). Further, statements made by counsel in a hearing on behalf of her client can be considered the client's judicial admissions and the client is bound by these judicial admissions. *Tex. Dep't of Public Safety v. Stanley*, 34 S.W.3d 321, 322 (Tex. App.—Fort Worth 2000, no pet.); *see also In re H.D.H.*, 127 S.W.3d 921, 923 (Tex. App.—Beaumont 2004, no pet.).

## Analysis

R.R. first challenges the Rule 11 agreement between the parties regarding the managing conservatorship of L.W.1, D.R., A.M.1, A.M.2, and P.R. According to R.R., there was no written

agreement, but an oral agreement to which her court appointed counsel agreed and which she never "personally and orally" approved. At trial, however, R.R. never complained that the agreement had not been personally and orally approved by her. And in her motion for new trial, she alleged being coerced into entering the agreement, but did not allege that she had not personally and orally approved the agreement. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). Here, R.R.'s complaints in her motion for new trial differ from her complaint on appeal. Thus, she has waived this issue on appeal. *See id*.; *see also **In Interest of M.M.W.***, 536 S.W.3d 612-13 (Tex. App.—Texarkana 2017, no pet.) (objection at trial that does not comport with complaint on appeal preserves nothing for review).

Even had R.R. preserved this issue for our review, her complaint fails. At the hearing on the agreement between the parties, the Department's attorney outlined the provisions of the agreement, under which: (1) M.R., J.R., and A.R., would be returned to R.R. on a monitored return; (2) fictive kin, J.E., would be granted permanent managing conservatorship of L.W.1 and D.R.; (3) the Department would be granted permanent managing conservatorship of A.M.1, A.M.2, and P.R.; (4) after a certain time period, the Department would transfer permanent managing conservatorship of A.M.1, A.M.2, and P.R. to their current caregivers, the children's paternal grandparents; and (5) the parents of each child would be appointed possessory conservators. The parties also agreed to R.R.'s visitation schedule with the children. After the Department's counsel summarized the agreement, R.R.'s counsel stated that R.R. consented to the agreement and that the monitored return would begin that day. Both the Department caseworker and the CASA supervisor testified as to the agreement between the parties, including the monitored return, managing conservatorship to fictive kin and the Department, and visitation schedule, and approved the agreement. At the conclusion of the hearing, the Department requested the trial court approve the agreement and the trial court did so. The trial court then said to R.R., "good luck to you, ma'am," and R.R. replied, "[t]hank you."

Again, at no time during the hearing did R.R. raise any complaint about the agreement, argue that she disagreed with counsel's representation regarding her consent to the agreement, or withdraw her consent to the agreement. Nevertheless, a Rule 11 agreement is valid if the agreement is made in open court and entered of record. *See* TEX. R. CIV. P. 11. Here, the agreement was read into open court by the Department's counsel, approved by R.R.'s counsel, and entered of record by the trial court. Therefore, the agreement is a valid Rule 11 agreement.

4

Further, R.R.'s counsel's statement on behalf of R.R. that she consented to the agreement can be considered a judicial admission if the statement satisfied the elements of a judicial admission. *See Lee*, 43 S.W.3d at 641. Counsel's statement was made during the course of a judicial proceeding, is contrary to R.R.'s claim on appeal that she did not consent to the agreement, was deliberate, clear, and unequivocal, and supported the Department's position that R.R. entered into a valid, enforceable agreement. *See id.* at 642. Enforcing R.R.'s consent to the agreement would be consistent with public policy. *See id.* Therefore, the statement meets the requirements of a judicial admission and R.R. is bound by that judicial admission. *See id.* at 641 (appellant's counsel's consent for trial court to approve amended inventory of marital estate was judicial admission that property in question was community property); *Stanley*, 34 S.W.3d at 322; *In re H.D.H.*, 127 S.W.3d at 923-24 (Department's statement at hearing that there was no evidence to terminate father on grounds that he knowingly placed or allowed children to remain in conditions that endangered physical or emotional well being was judicial admission that supported an arguable basis for appeal).

Because R.R. consented to the parties' agreement regarding the permanent managing conservatorship of L.W.1, D.R., A.M.1, A.M.2, and P.R. in open court and did not retract it at the time, the agreement was a valid Rule 11 agreement and a judicial admission, which she is now barred from disputing. *See Lee*, 43 S.W.3d at 641; *Dowelanco*, 4 S.W.3d at 871. Accordingly, we overrule R.R.'s second issue.

## AGREEMENT OBTAINED UNDER DURESS

In her third issue, R.R. contends that the trial court erred in rendering judgment on the open court settlement agreement between the parties obtained under coercion and stress.

Coercion occurs if someone is compelled to perform an act by force or threat. *In re D.E.H.*, 301 S.W.3d 825, 828-29 (Tex. App.—Fort Worth 2009, pet. denied); *see also* TEX. PENAL CODE ANN. § 1.07(a)(9) (West Supp. 2019) (setting forth definition of "coercion"); *B.A.L. v. Edna Gladney Home*, 677 S.W.2d 826, 831 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e) (stating that the "essence of an 'undue influence' claim is overcoming the free will of an individual and substituting the will of another, thereby causing a person to do an act which he would not otherwise have done" and that "'[o]verreaching' is tricking, outwitting, or cheating a person into doing an act which he would not otherwise have done"). Duress occurs when, due to some kind of threat, a person is incapable of exercising her free agency and unable to withhold consent. *In re D.E.H.*, 301 S.W.3d at 829; *but see Methodist Mission Home of Tex. v. N.A.B.*, 451 S.W.2d 539, 543 (Tex. Civ. App.—San Antonio

1970, no writ) (reasoning that "exerted influence cannot be branded as 'undue' merely because it is persuasive and effective").

Here, in an affidavit attached to her motion for new trial, R.R. stated that she was "forced" to consent to the parties' agreement because during two meetings between the parties, the Department threatened to terminate her parent-child relationship with all of her children. She stated that the Department also told her that she would not obtain custody of any of her children. As a result, R.R. said, she suffered stress and anguish. Further, R.R. stated that she consented to the agreement during the hearing because she was depressed and feared losing her children.

The record does not indicate that the trial court ruled on the motion; thus, it was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c) (if an original or amended motion for new trial is not determined by written order signed within seventy-five days after judgment was signed, it shall be considered overruled by operation of law on expiration of that period). When a motion for new trial is overruled by operation of law, "'the issue is whether the trial court abused its discretion by not granting the motion for new trial and allowing the motion to be overruled by operation of law.'" *Interest of B.L.W.*, No. 12-18-00281-CV, 2019 WL 4727823, at *7 (Tex. App.—Tyler Sept. 27, 2019, no pet.) (mem. op.) (quoting *Continental Carbon Co. v. Sea-Land Serv., Inc.*, 27 S.W.3d 184, 187 (Tex. App.—Dallas 2000, pet. denied)).

Courts have determined in cases involving voluntary affidavits of relinquishment that a parent's feeling pressured, emotionally upset, or under stress when signing the affidavit did not render the affidavit involuntary. In *In re D.E.H.*, the parent stated that although "it was [her] decision" to sign the affidavit, that she "more or less" understood the affidavit, and that she was never threatened during the mediation, she testified that she felt "pressured" to sign the affidavit. *In re D.E.H.*, 301 S.W.3d at 830-32. She further testified that she felt "forced" to sign the relinquishment, "pressured," and with no other "way out." *Id.* However, the appellate court found there was no evidence that the parent's execution of the affidavit of relinquishment resulted from coercion, duress, fraud, or any other form of wrongdoing. *Id.*

In other words, that a parent feels pressured, emotionally upset, and under stress when signing an affidavit of relinquishment does not render the affidavit involuntary or rise to the level of duress or coercion. *In re Z.M.R.*, 562 S.W.3d 783, 793 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Lumbis v. Tex. Dep't of Protective & Regulatory Servs.*, 65 S.W.3d 844, 851 (Tex. App.—Texarkana 2002, pet. denied); *In re M.B.T.*, No. 10-16-00067-CV, 2016 WL 3896486, at *3 (Tex. App.—Waco July 13, 2016, pet. denied) (mem. op.). Applying these principles to the present case, even though R.R.

alleges that she felt pressure, stress, and anguish before consenting to the parties' agreement, the record is devoid of any evidence that R.R.'s consent to the agreement at the hearing resulted from coercion or duress. *See In re Z.M.R.*, 562 S.W.3d at 793; *Lumbis*, 65 S.W.3d at 851; *In re M.B.T.*, 2016 WL 3896486, at \*3.

R.R. also appears to complain that her consent to the agreement was obtained by duress or coercion because she suffers from mental health issues. At various hearings throughout the case, the trial court heard some testimony that R.R. suffered from mental health issues, that she had been hospitalized in a psychiatric hospital, that she refused medications at one time, and that her mental issues were her most severe obstacle in obtaining the return of her children. However, at the most recent hearing, the Department caseworker stated that the caregiver for A.M.1, A.M.2, and P.R. said R.R. was calm, appropriate, and medicated during the last visitation. The caregiver stated that she allowed a "lot of visits" because of R.R.'s recent behavior. At the final hearing to approve the parties' agreement, the Department caseworker testified that R.R. had done well recently and obtained employment. The CASA supervisor testified that R.R. made improvements and believed that R.R. was ready for a monitored return of M.R., J.R., and A.R. According to the CASA supervisor, R.R. was in a "better place" and had a better support system. Further, R.R. was, that day, to return home with three of her children and maintain possessory conservatorship of the remainder of her other children with the approval of the trial court, the Department, and CASA. There is simply no evidence to support R.R.'s complaint that her consent to the parties' agreement resulted from duress or coercion because of her mental health issues.

Because the record contains no evidence that R.R.'s consent to the agreement at the hearing resulted from coercion or duress, the trial court did not abuse its discretion by not granting the motion for new trial and allowing R.R.'s motion to be overruled by operation of law. *See In re Z.M.R.*, 562 S.W.3d at 793; *Lumbis*, 65 S.W.3d at 851; *In re M.B.T.*, 2016 WL 3896486, at \*3. We overrule her third issue.

### DISPOSITION

Having determined that R.R.'s first issue is moot, and overruled R.R.'s second and third issues, we *affirm* the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered April 30, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 30, 2020**

**NO. 12-19-00375-CV**

**IN THE INTEREST OF L.W., D.R.,
A.M., A.M., AND P.R., CHILDREN**

Appeal from the County Court at Law No. 2

of Angelina County, Texas (Tr.Ct.No. CV-00261-18-04)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*