**Opinion issued August 10, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-22-00394-CR**

———————————

**DAVID JOSE MOLINA LOPEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Case No. 1664259**

---

**MEMORANDUM OPINION**

Appellant, David Jose Molina Lopez was convicted of murdering Jose Diaz

Orellano, and the trial court sentenced Lopez to 40 years' confinement. In a single

issue on appeal, Lopez contends for the first time that trial counsel was ineffective

by failing to locate an alibi witness. Because Lopez failed to establish that trial counsel's performance was deficient, we affirm.

**Background**

On the night Orellano was shot, he was having drinks inside his apartment with his nephew and his friend, C. Castro-Aguilar. Around midnight, Orellano's wife returned home. Orellano's nephew had left earlier, and Castro-Aguilar and Orellano went out to buy more beer. The pair were urinating by the apartment dumpsters when Castro-Aguilar heard two shots. Castro-Aguilar did not see anyone fire a weapon. Orellano then told Castro-Aguilar, "they got me," or "they hit me," and "Chino." Orellano grabbed Castro-Aguilar's arm and left a blood stain on his clothing.

Castro-Aguilar saw Lopez, whose nickname is "El Chino," holding a gun and standing between the dumpsters and the parking area. Castro-Aguilar saw Lopez get into the passenger side of a white car that belonged to "Colocho,"[1] who also lived at the same apartments. The car drove toward the entrance gate, but it was closed so they were forced to turn around and head through the exit gate.

Orellano managed to walk back to his apartment and told his wife "Chino fucked me over." Orellano then collapsed on the way to his bathroom. Salazar called

---

[1] Castro-Aguilar testified that "Colocho" was a nickname and that he only knew that person by that name.

911 and Orellano was taken to the hospital. He survived and was conscious the week after the shooting. His wife asked him if he had been in a fight or argument. Orellano shook his head and said, "no." Orellano died later at the hospital.

Police located Lopez at his apartment along with his friend J. I. Cruz-Banegos.[2] Police detained Lopez and were able to locate a white vehicle in the apartment parking lot, owned by Cruz-Banegos, that matched Castro-Aguilar's description of the getaway vehicle. Police did not recover the weapon, bullets, or shell casings.

At trial, K. May, a forensic chemist at the Harris County Institute of Forensic Sciences testified about swabs taken from Lopez's left and right hands. The swabs from Lopez's left hand were positive for gunshot residue. May explained that meant that Lopez likely had some sort of an association with the discharge of a firearm which could include firing a weapon, being in close proximity to a weapon when it was fired, or touching something that had gunshot residue on it. The swabs from Lopez's right hand only showed a limited result for gunshot residue so May was only able to say that swab indicated that Lopez could have had an association with gunshot residue.

---

[2] Cruz-Banegos is referred to by multiple names and spellings throughout the record. We refer to him by the name provided in his affidavit.

After being found guilty and sentenced to 40 years' confinement, Lopez was appointed new appellate counsel. Lopez's new attorney filed a motion for new trial based on newly discovered evidence. The motion argued that there was testimony of an alibi witness, that would probably have resulted in a different outcome at trial. It included affidavits from J. I. Cruz-Banegos and trial counsel. Cruz-Banegos's affidavit stated he was never contacted and would have testified to having been with Lopez at a different location at the time of the shooting. Trial counsel's affidavit stated she hired an investigator and made several unsuccessful attempts to contact Cruz-Banegos but was unable to locate him. At the hearing on the motion, Cruz-Banegos and trial counsel testified, and the trial court denied the motion.

**Ineffective Assistance of Counsel**

Lopez contends that trial counsel was ineffective for failing to locate an alibi witness. The State argues that Lopez cannot take a contradictory position on appeal to the position he took at the hearing on his motion for new trial, and that even if he can, neither prong of the *Strickland v. Washington*, 466 U.S. 668, 687 (1984), test is satisfied.

**A.      Standard of Review and Applicable Law**

An ineffective assistance of counsel claim may be raised for the first time on appeal. *Robinson v. State*, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000). Review of counsel's representation is highly deferential, and we indulge a strong presumption

4

that counsel's conduct fell within a wide range of reasonable representation. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). We will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). To establish an ineffective-assistance claim, an appellant must show by a preponderance of the evidence that (1) his counsel's performance was deficient, and (2) there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *See Strickland*, 466 U.S. at 687. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An appellant's failure to satisfy either prong defeats the ineffective-assistance claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

Our review is highly deferential to trial counsel, and ineffectiveness must "be firmly founded in the record." *Bone v. State*, 77 S.W.3d 828, 833, 835 (Tex. Crim. App. 2002). Counsel has a duty to make reasonable investigations or to make a reasonable decision that a particular investigation was unnecessary. *Strickland*, 466 U.S. at 691. Failing to conduct an adequate investigation may constitute ineffective assistance. *See Wiggins v. Smith*, 539 U.S. 510, 521–22 (2003). Part of counsel's duty to investigate is the responsibility to seek out and interview potential witnesses. *Ex parte Welborn*, 785 S.W.2d 391, 394 (Tex. Crim. App. 1990). We "review the

totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

**B.    Analysis**

**1.    Judicial Estoppel and Judicial Admissions**

Because the State contends that Lopez may not complain on appeal that trial counsel's efforts to locate Cruz-Banegos were inadequate, we review this argument first. *See* TEX. R. APP. P. 47.1. While the State mentions judicial estoppel in its brief, it cites to cases involving judicial estoppel and judicial admissions and makes arguments in line with both theories, so we construe its argument to be based on theories of judicial estoppel and judicial admissions. *See El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 316 (Tex. 1999) (liberally construing briefs to avoid waiver and to obtain "just, fair, and equitable adjudication" of litigants' rights).

Judicial estoppel applies when (1) a sworn, inconsistent statement was made in a prior judicial proceeding; (2) the party now sought to be estopped successfully maintained the prior position; (3) the statement was not made inadvertently or because of mistake, fraud, or duress; and (4) the statement was deliberate, clear, and unequivocal. *Galley v. Apollo Associated Servs., Ltd.*, 177 S.W.3d 523, 528–29 (Tex. App.—Houston [1st Dist.] 2005, no pet.). This is not a situation where a party has adopted a position that is inconsistent with one it successfully maintained in a

prior proceeding, so judicial estoppel is not implicated here. *See Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008) ("The doctrine of judicial estoppel precludes a party from adopting a position inconsistent with one that it maintained successfully in an earlier proceeding."); *see also Graves v. Tomlinson*, 329 S.W.3d 128, 138 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("[a]n appeal in the same case is not a 'subsequent action' to which judicial estoppel applies.").

In contrast to judicial estoppel, the doctrine of judicial admissions applies when a party takes contradictory positions in the same proceeding, rather than in separate proceedings. *See Pleasant Glade*, 264 S.W.3d at 6 ("Contradictory positions taken in the same proceeding may raise issues of judicial admission but do not invoke the doctrine of judicial estoppel."). A judicial admission is a formal waiver of proof, typically found in pleadings or stipulations, that is conclusive on an issue and bars the admitting party from disputing it. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) ("A judicial admission that is clear and unequivocal has conclusive effect and bars the admitting party from later disputing the admitted fact."). This doctrine is based on the public policy that it would be unjust to allow a party to recover after they have sworn themself out of court. *See DowElanco v. Benitez*, 4 S.W.3d 866, 871 (Tex. App.—Corpus Christi 1999, no pet.). Counsel's statements on a client's behalf may serve as judicial

7

admissions. *In re M.M.O.*, 981 S.W.2d 72, 84 (Tex. App.—San Antonio 1998, no pet.). But, "[a] party may not judicially admit a question of law." *H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex. App.—San Antonio 1997, no writ); *see Jackson v. Tex. S. Univ.–Thurgood Marshall Sch. of Law*, 231 S.W.3d 437, 440 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Because whether trial counsel acted with reasonable diligence is a question of law, the doctrine of judicial admission does not apply here.

### 2. Trial Counsel's Performance

We now turn to Lopez's ineffective assistance of counsel claim. Trial counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The failure to call a witness is deficient performance if the witness was available and the defendant would have benefited from their testimony. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Kizzee v. State*, 788 S.W.2d 413, 416 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). A witness is not considered "available" if the witness cannot be located and counsel has made reasonable attempts to secure their presence. *See Ex parte McFarland*, 163 S.W.3d 743, 754–55 (Tex. Crim. App. 2005) (counsel was not ineffective for failing to interview potential witnesses who could not be located).

Here, trial counsel attempted to contact Cruz-Banegos. In an affidavit and testimony, trial counsel stated that she called him multiple times and left him messages, that Lopez's previous trial counsel had attempted to contact him, that her own investigator attempted to contact him, and the State's investigators attempted to contact him, but none were able to do so. Lopez argues that trial counsel should have subpoenaed Cruz-Banegos, but the record does not establish that trial counsel had Cruz-Banegos's correct physical address. *See Coons v. State*, 758 S.W.2d 330, 334 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (counsel not deficient for failing to secure witnesses' presence at trial when record did not show that counsel knew their correct address). Lopez goes on to complain that trial counsel should have sent text messages or attempted to contact Cruz-Banegos through social media. But this is the first time Lopez has made this argument, which means trial counsel has not been given an opportunity to explain her actions. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (trial counsel should ordinarily be given opportunity to explain their actions before being found ineffective). Where reasons for failing to do something do not appear in the record, we review counsel's conduct with great deference and without the distorting effects of hindsight. *Id.*; *see Brown v. State*, 129 S.W.3d 762, 767 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (we do not assume that counsel did not properly investigate a defense when the record is silent as to the depth of counsel's investigation).

9

Based on the record, Lopez failed to establish that trial counsel's attempts to locate Cruz-Banegos were deficient. *See Bernard v. State*, No. 14-07-00473-CR, 2008 WL 4308467, at *2 (Tex. App.—Houston [14th Dist.] Aug. 28, 2008, no pet.) (mem. op., not designated for publication) (counsel made objectively reasonable attempts to locate witness by using an investigator when only available contact information was phone number); *see Jones v. State*, No. 11-01-00233-CR, 2002 WL 32344899, at *5 (Tex. App.—Eastland Nov. 14, 2002, no pet.) (mem. op., not designated for publication) (counsel made reasonable effort to locate witness by using investigator who left phone messages for the witness because he did not have witness's physical address); *see also Goodspeed*, 187 S.W.3d at 392 (absent an opportunity to explain their actions, we will not find counsel's performance deficient unless the conduct was so outrageous that no competent attorney would have engaged in it). Thus, Lopez has not overcome the presumption that trial counsel's performance fell within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. We overrule Lopez's sole issue. *See Williams*, 301 S.W.3d at 687 (failure to satisfy one prong of the *Strickland* test negates court's need to consider the other prong).

## Conclusion

We affirm the trial court's judgment.

Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Rivas-Molloy.

Do not publish. TEX. R. APP. P. 47.2(b).